SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Thomas Griepenburg v. Township of Ocean (A-55-13) (073290)**

**Argued November 12, 2014 – Decided January 22, 2015**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the circumstances under which municipal zoning ordinances represent a legitimate exercise of a municipality's power to zone property consistent with its Master Plan and Land Use Law (MLUL) goals.

The Township of Ocean (Township) is a largely rural-suburban community bordered by the Pinelands National Reserve and Barnegat Bay. In the late 1990's, the Township began a comprehensive planning process in anticipation of population growth and increased development. The Township subsequently adopted the smart growth principles fostered by the State Development and Redevelopment Plan (State Plan). The Township worked with the New Jersey Department of Environmental Protection (DEP) and other agencies to update its Master Plan for development in accordance with smart growth principles.

In 2004, the Township submitted a Petition for Plan Endorsement to the State Planning Commission (Planning Commission) in which it sought to have its Waretown section designated as a town center (Waretown Town Center) and to convert a large area of land from a PA-2 Suburban Planning Area to a PA-5 Environmentally Sensitive Planning Area. The Planning Commission endorsed the Township's petition, and as a condition thereof, adopted Resolution 2005-03 (the Resolution) mandating that the Township "revise its municipal zoning ordinance to be consistent with the master plan and planning area changes within 60 days of the endorsed plan." In 2006, the Township passed a series of ordinances to facilitate its land use goals and accord with the Resolution.

In April 2007, plaintiffs, who own a significant amount of land in the Township, filed a complaint against the Township, the DEP, and the New Jersey Department of Community Affairs (DCA) challenging the validity of three ordinances (the Ordinances) that affected their property. They alleged that they were arbitrary, unreasonable, capricious, and illegal and that the rezoning constituted inverse condemnation. Plaintiffs live in a single-family residence on the eastern portion of one of several lots they own. The remainder of the property consists of undeveloped woodlands. When plaintiffs acquired the property, it was subject to mixed zoning. As a result of the Planning Commission's endorsement of the Township's Petition, all but one of plaintiffs' lots were converted to PA-5 Environmentally Sensitive Planning Areas.

At trial, the parties' experts – Thomas A. Thomas, P.P., (Thomas) for plaintiffs and Stanley Slachetka, P.P., (Slachetka) for the Township, testified. Thomas testified that the Ordinances are invalid as applied to plaintiffs because the property does not have significant environmental restraints. Slachetka testified that the Ordinances were enacted as part of the Township's smart growth planning process, which included preservation of natural resources as a goal. The trial court held that plaintiffs failed to establish that the inclusion of their property in an Environmental Conservation district (EC district) was arbitrary, capricious, or unreasonable. Concluding that the Ordinances fulfilled the four criteria established in Riggs v. Township of Long Beach, 109 N.J. 601, 611-12 (1988), the trial court dismissed plaintiffs' entire complaint, but later reinstated their inverse condemnation claim. The trial court's judgment held open the opportunity for plaintiffs to pursue an inverse condemnation claim if a variance were sought and denied.

On appeal, the Appellate Division reversed in an unpublished opinion and held that the Ordinances were invalid as applied because the downzoning was not required to serve the Ordinances' stated purposes. The panel did not reach the inverse condemnation claim. This Court granted certification. 217 N.J. 285 (2014).

**HELD**: The challenged Ordinances represent a legitimate exercise of the municipality's power to zone property consistent with its Master Plan and MLUL goals.

1. In 1988, the Court established a four-part test to facilitate judicial review of challenges to municipal zoning ordinances. The ordinance must: (1) advance one of the purposes of the MLUL as set forth in the statute; (2) be substantially consistent with the land use and housing plan elements of the master plan or be designed to effectuate such plan elements, unless the requirements of that statute are otherwise satisfied; (3) comport with constitutional constraints on the zoning power; and (4) be adopted in accordance with statutory and municipal procedural requirements. Riggs, supra. (pp. 19-20)

2. In examining the Ordinances' validity, the trial court tied its findings to the Riggs test and to MLUL goals. After summarily finding that there was no challenge to the fourth factor, the court proceeded to make detailed findings with respect to the remaining factors. The court's analysis adhered to the Riggs criteria and its findings were grounded in credible evidence. As the trial court clearly and thoroughly explained the record bases for its findings and conclusions, this Court defers to its determination that each factor was satisfied and that the challenged Ordinances are valid. (pp. 21-25)

3. The trial court also found that the Township's inclusion of plaintiffs' property in the EC district was reasonably related to the purposes of the Ordinances. The Appellate Division reached a contrary determination, finding that the property lacked specific environmental constraints. As to the Appellate Division's determination based on plaintiffs' as-applied challenge, differing reasoning leads this Court to reverse the appellate judgment. The appellate panel employed an overly narrow view of the Township's land use planning goals. Contrary to plaintiffs' and amici's arguments, the rezoning that occurred in the Township, which included a downzoning of plaintiffs' property, cannot fairly be distilled to the assertion that it constituted the creation of open space for the mere sake of having open space. (pp. 25-26)

4. Plaintiffs argued that their property contained neither evidence of any endangered species, nor open waters, wetlands, flood plains, or steep slopes, but the record shows that that was not the justification for the Township's actions. Moreover, their property's inclusion in the EC district must be measured against the Township's actual objectives in enacting the Ordinances. The record developed by the Township supported that much of the area surrounding the plaintiffs' property is undeveloped or undevelopable. That supported the Township's assertion, and the trial court's conclusion, that the property was appropriately zoned to achieve the goal of promoting smart growth through concentrated development. (pp. 27-29)

5. Based on the record, which included evidence showing that plaintiffs' property connected to other undeveloped forested properties that constituted a habitat for endangered snakes and other wildlife, the trial court acted within its authority when it concluded that designating the property as part of the EC district was not arbitrary or capricious. To the extent that the Appellate Division also found that the Ordinances were invalid as applied, the Court notes that the trial court's reasonable determinations are entitled to deference and that the Ordinances enjoy presumptive validity. The Court accepts the trial court's determination that the Ordinances were not designed specifically to inhibit development on the plaintiffs' property. (pp. 29-30)

6. This case demonstrates the benefit to be derived from adhering to the doctrine of exhaustion of administrative remedies. Relying on the Court's decision in Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282 (2001), in which this Court invalidated an ordinance as applied to the plaintiff's property without requiring the plaintiff to first seek a variance, plaintiffs and amici argue that plaintiffs were not required to exhaust their administrative remedies by seeking a variance before initiating their as-applied challenge to the Ordinances. Pheasant Bridge should not be read to suggest that a landowner challenging an ordinance as applied to his or her property is excused from first exhausting administrative remedies. To the contrary, a landowner who wishes to challenge the validity of an ordinance as applied should exhaust administrative remedies before initiating an action at law unless the interests of justice requires otherwise. Plaintiffs should have sought a variance before pursuing either an as-applied challenge or an inverse condemnation claim because none of the exceptions to the exhaustion doctrine apply. Exhaustion of administrative relief is the best remedy. Thereafter, if their request for a variance is unsuccessful, an inverse condemnation action will be the appropriate vehicle through which plaintiffs can seek relief. (pp. 30-35)

The judgment of the Appellate Division is **REVERSED** and the judgment of the trial court is **REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE LaVECCHIA'S opinion. JUDGE CUFF (temporarily assigned) did not participate.**

SUPREME COURT OF NEW JERSEY
A-55 September Term 2013
073290

THOMAS GRIEPENBURG and CAROL
GRIEPENBURG,

    Plaintiffs-Respondents,

       v.

TOWNSHIP OF OCEAN,

    Defendant-Appellant,

       and

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION and STATE OF NEW
JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS,

    Defendants.

Argued November 12, 2014 – Decided January 22, 2015

On certification to the Superior Court, Appellate Division.

Gregory P. McGuckin argued the cause for appellant (Dasti, Murphy, McGuckin, Ulaky, Koutsouris & Connors, attorneys; Mr. McGuckin and Christopher J. Dasti, on the briefs).

Peter H. Wegener argued the cause for respondents (Bathgate, Wegener & Wolf, attorneys; Mr. Wegener and Rui O. Santos, on the brief).

Richard J. Hoff, Jr., argued the cause for amicus curiae New Jersey Builders Association (Bisgaier Hoff, attorneys).

Mark Miller submitted a brief on behalf of amicus curiae Pacific Legal Foundation.

JUSTICE LaVECCHIA delivered the opinion of the Court.

Plaintiffs, landowners Thomas and Carol Griepenburg, challenge the validity of a series of ordinances enacted by defendant, Township of Ocean (the Township). The ordinances rezoned a large tract of land, including most of plaintiffs' property, from residential and commercial use to an Environmental Conservation district (EC district), thereby restricting future development of their property. The trial court dismissed plaintiffs' challenge. In doing so, the court applied the criteria for assessing a zoning ordinance's validity established in Riggs v. Township of Long Beach, 109 N.J. 601, 611-12 (1988), and determined that the ordinances were a valid exercise of municipal zoning power and were not arbitrary, capricious, or unreasonable. The court rejected plaintiffs' as-applied challenge, and it granted summary judgment to the Township on plaintiffs' inverse condemnation claim because plaintiffs had not exhausted their administrative remedies by seeking a variance. The Appellate Division reversed, concluding that the ordinances were invalid as applied to plaintiffs' property.

4

We reverse.  We conclude that the ordinances represent a legitimate exercise of the municipality's power to zone property consistent with its Master Plan and Municipal Land Use Law[1] (MLUL) goals, and we hold that plaintiffs have not overcome the ordinances' presumption of validity.  The inclusion of plaintiffs' property in the EC district rationally relates to the municipality's comprehensive smart growth development plan, which concentrated development in a town center surrounded by a green-zone buffer.  That plan had the additional benefit of protecting a sensitive coastal ecosystem through the preservation of undisturbed, contiguous, forested uplands, of which plaintiffs' property is an integral and connected part. We therefore decline to invalidate ordinances that fulfill MLUL goals and other legitimate land-use planning objectives through plaintiffs' as-applied challenge.  Rather, we reassert the importance of exhausting administrative remedies and conclude that plaintiffs' claim for redress for the downzoning of their property is better addressed through their inverse condemnation claim, which, as the trial court held, plaintiffs may pursue if they are denied a variance.

I.

A.

---

[1] N.J.S.A. 40:55D-1 to -163.

The Township is a predominantly rural-suburban community with a population of approximately 6,500 according to this record. It is bordered on the west by the Pinelands National Reserve and to the east by Barnegat Bay. Much of the Township is within the Oyster Creek watershed. The western portion of the Township is governed by the New Jersey Pinelands Commission, and the eastern portion is considered a "coastal area" under the Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -33.

In the late 1990's and early 2000's, the Township began a comprehensive planning process for its future growth. A catalyst for this process was anticipated population growth and increased development resulting from construction of a southbound exit (Exit 69) for the Township on the Garden State Parkway (Parkway). During this planning process, the Township determined that it would adopt the "smart growth" principles fostered by the State Development and Redevelopment Plan (State Plan).

Under the State Plan, the preferred form of development is through compact centers surrounded by low-density environs. The purpose of this smart growth form of development is to consume less land, deplete fewer natural resources, and use the State's infrastructure more efficiently. In other words, the State Plan

promotes sustainability principles. Smart growth stands in contrast to "sprawl development."

In the early 2000's, the Township worked in concert with the New Jersey Department of Environmental Protection (DEP), the Office of Smart Growth, and a variety of other state agencies to re-examine and update its Master Plan for development in accordance with smart growth principles. The Township's Amended Land Use Plan Element, Circulation Plan Element, and Master Plan Reexamination Report from November 2005 summarize the evolution of its Master Plan during those years and detail the Township's goals. Overall, the 2005 Master Plan reflects the Township's desire to concentrate development in a town center and to facilitate low-density environs surrounding the center, the latter of which would both promote center-based development and protect environmentally sensitive areas outside of the center.

As part of its planning process, on December 24, 2004, the Township submitted a Petition for Plan Endorsement to the State Planning Commission (Planning Commission) pursuant to the State Planning Act, N.J.S.A. 52:18A-196 to -207, and the State Planning Rules, N.J.A.C. 5:85-1 to -8.7. In that petition, the Township sought to have its historic Waretown section designated as a "town center" (Waretown Town Center). Additionally, the Township requested changes to the planning-area boundaries that were set forth in the State Plan. Specifically, the Township

7

sought to convert a large area of land from a PA-2 Suburban Planning Area to a PA-5 Environmentally Sensitive Planning Area. This area included land adjacent to the Parkway and between the Oyster Creek watershed to the north and the Waretown Creek to the south.  The Township submitted an amended petition on June 13, 2005.

The Planning Commission endorsed the Township's Petition for Plan Endorsement on December 7, 2005, by Resolution 2005-3. In the resolution, the Planning Commission noted that the Office of Smart Growth had approved the town-center designation and the changes in planning-area designation from PA-2 to PA-5, and that these changes were consistent with the State Plan criteria for Environmentally Sensitive Planning Areas.  In particular, the Planning Commission noted that the area re-designated as a PA-5 is "a rare contiguous coastal forest area that represents the last substantial undeveloped land in the Township" whose protection "will preserve a large contiguous ecosystem."  As a condition of plan endorsement, Resolution 2005-03 states that the Township "shall revise its municipal zoning ordinance to be consistent with the master plan and planning area changes within 60 days of the endorsed plan."

Starting in January 2006, the Township passed a series of downzoning ordinances to facilitate its land-use goals and accord with Resolution 2005-03.  On January 12, 2006, the

8

Township enacted Ordinance 2006-06, which re-designated all property that had been previously designated C-3 commercial to R-2 residential zones.  On September 21, 2006, the Township adopted Ordinance 2006-34, which rezoned existing industrial zones outside of the Waretown Town Center into an EC district.  Ordinance 2006-34 provides, in relevant part:

> Section 1:  The Land Use Board of the Township of Ocean adopted a periodic examination of the Township's Master Plan and Land Use Element thereof.  That report, dated November 2005, included certain amendments to the Land Use Plan Element and Circulation Plan Element of the Township's Master Plan which are designed to provide the planning framework and foundation for implementation of the Township's proposed Waretown Town Center as well as proposals to meet land use goals, environmental goals, housing needs, open space goals, circulation, parking, design, economic development and utility infrastructure goals.  Specifically, the Reexamination Report recommended that the Township's land use classifications be consistent with the Township's proposed Waretown Center Concept Plan and further recommended that any future sewer/water infrastructure be limited to the Township's town center and those areas of the Township within the [PA-2] designation.  Consistent with the Township's goals and objectives, the Master Plan Reexamination Report recommended the rezoning of the Township's existing I-1 and I-2 Industrial Zoning Districts outside of the Center to an Environmentally Sensitive land use designation.  In order to implement that recommendation, this ordinance amends the Township's Zoning Ordinance to rezone the I-1 and I-2 Industrial Zone Districts located outside of the Waretown Town Center to a new EC, Environmental Conversation District.

9

Section 3 of Ordinance 2006-34 amended Title 18 of the Township Code to include Chapter 18.21, which details use and density parameters for the EC district. According to Section 18.21.010, entitled "General Intent," the EC district

> generally corresponds to those environmentally sensitive areas lying outside of and to the west of the Waretown Town Center and east of the Garden State Parkway. It is the intent of this area to act as the low density environs of the center. Given the environmental[ly] sensitive characteristics of this area, only very low density residential development or other low intensity uses are allowed. Protection and conservation of the natural resources of the area is the principal objective of the EC district.

Section 18.21.050(A)(1) placed a twenty-acre minimum lot size on any development within the EC district. On October 30, 2006, the Township enacted Ordinance 2006-37, which extended the Township's EC district to encompass all areas designated PA-5 Environmentally Sensitive under the State Plan.

On March 5, 2007, the DEP published its determination that the Township's changes to the planning-area designations and town-center boundaries approved by the Planning Commission were consistent with CAFRA, a necessary step in the Township's land-use planning process. See 39 N.J.R. 768(b) (Mar. 5, 2007) (approving Township's submissions); see also N.J.A.C. 7:7E-5B.3(b) (providing that "the [DEP] shall evaluate the new or

10

changed [Planning Area] boundary to determine whether it is consistent with the purposes of [CAFRA]"). The DEP concluded:

> [T]he delineated community development boundaries put forth by Ocean Township encompass existing and planned development and redevelopment, and recognize the extent of environmentally sensitive lands and waterways. The designated Waretown CAFRA Town Center and changed State Plan Policy Map designations concentrate the pattern of coastal residential, commercial and resort development and better protect vulnerable coastal uplands and wetlands. The Waretown CAFRA Town Center and changed State Plan Policy Map designations are consistent with the Coastal Zone Management Rules, N.J.A.C. 7:7E, particularly the CAFRA decision-making process established at N.J.A.C. 7:7E-1.5(b)1ii.
>
> The Waretown CAFRA Town Center designation encourages the incorporation of smart growth designs into development and redevelopment projects, and in more compact forms due to the higher impervious cover limits and development potential possible in a CAFRA Town Center.
>
> [39 N.J.R. 768(b).]

In April 2007, plaintiffs filed their complaint in lieu of prerogative writs against the Township, DEP, and the New Jersey Department of Community Affairs (DCA). See R. 4:69-1. The complaint challenged the validity of the ordinances affecting their property (hereinafter collectively referred to as the Ordinances).[2] Plaintiffs alleged that the Ordinances were

_____

[2] Plaintiffs specifically challenged Ordinance 2006-34; however, the Township acknowledges that plaintiffs intended to challenge

11

"arbitrary, unreasonable, capricious and illegal." Among other claims, plaintiffs contended that the rezoning constituted "inverse condemnation."

Plaintiffs own approximately thirty-four acres of land in the Township. Their landholdings consist of Lots 1.01, 1.04, 2, 3, and 6.01 in Block fifty-six of the Ocean County Tax Map. The property extends south from its frontage along County Road 532 (CR-532, also known as Wells Mills Road) and is directly east of the Parkway. CR-532 connects the Parkway with Route 9. The property is bordered by intermittent residential development to the south and east, the Waretown Cemetery and various vacant lots to the north, and mostly undeveloped land to the west.

Plaintiffs live on a two-acre, single-family residence on the eastern portion of Lot 2 of their property. The residence has existed on the property since the early 1970s and was purchased by plaintiffs in 1985. The remainder of the property consists of undeveloped woodlands. When plaintiffs acquired the property, it was subject to "mixed zoning" and included portions that were zoned as R-2 residential and C-3 commercial. The C-3 commercial zone permitted various kinds of commercial development -- including use for hotel, retail, medical, and office facilities -- on a minimum of one-acre lots, while the R-

Ordinance 2006-06 and Ordinance 2006-37, as well. We consider this action a challenge to all three.

12

2 residential zone permitted single-family dwellings, public parks, and nature preserves on a minimum of two-acre lots.

As a result of the Planning Commission's endorsement of the Township's Petition, all but Lot 6.01 of plaintiffs' property was converted from a PA-2 Suburban Planning Area to a PA-5 Environmentally Sensitive Planning Area for the purposes of the State Plan; Lot 6.01 remained a PA-2 Suburban Planning Area. Ordinance 2006-06 rezoned a portion of plaintiffs' property from C-3 commercial to R-2 residential. Ordinance 2006-37 rezoned as an EC district all property within a PA-5 Environmentally Sensitive Planning Area; thus, it converted all of the plaintiffs' property, save Lot 6.01, to an EC district. Lot 6.01, which is 2.68 acres, remains zoned for R-2 residential development and could be developed with a single-family residence in accordance with R-2 density restrictions of one unit per two acres. Although plaintiffs' single-family residence conforms to the EC district's density requirement of one unit per twenty acres, no further development of their property within the EC district is permitted under the new zoning.

B.

In September 2007, plaintiffs' claims against DEP and DCA were dismissed without prejudice. The four-day bench trial on the Ordinances' validity consisted largely of testimony by

13

Thomas Griepenburg and the parties' respective planning experts: Thomas A. Thomas, P.P., (Thomas) for plaintiffs and Stanley Slachetka, P.P., (Slachetka) for the Township. Thomas testified that the Ordinances are invalid as applied to plaintiffs because the subject property does not have significant environmental restraints such as threatened or endangered species, floodplains, wetlands, steep slopes, or any of the usual environmental constraints that merit protection within EC districts. He argued that the Ordinances are unduly restrictive because higher-density development -- particularly cluster development -- on plaintiffs' property would be consistent with the Township's land-use goals and with CAFRA regulations.

Slachetka testified that the Ordinances were enacted as part of the Township's smart growth planning process, which included preservation of natural resources as a goal. In establishing the EC district, the Township sought to protect a sensitive coastal ecosystem by preserving a large, contiguous, forested area and by creating a distinct boundary between the town center and outer environs. According to Slachetka, it was reasonable to include plaintiffs' property in the EC district because their property is a "key connection point" linking other forested areas.

Based on the record developed at trial, the court found that the Ordinances converting plaintiffs' property to an EC

14

district had been adopted as "part of a global and comprehensive undertaking on the part of [the Township] to employ principles of smart growth as well as the creation and designation of a Waretown Town Center."  The court stated that "the goal of the Township was to achieve growth and development where there was less sprawl and a concentration of development in a core region along with the protection of environmentally sensitive areas." The court held that, in light of those legitimate goals, plaintiffs failed to establish that the inclusion of their property in the EC district was arbitrary, capricious, or unreasonable.  Although the evidence did not establish the presence of freshwater wetlands, flood plains, or threatened or endangered species on the subject property, the court concluded that a contiguous environmentally sensitive area includes expected habitats for threatened or endangered species.

In so holding, the court cited In re Adoption of N.J.A.C. 7:15-5.24(b) & N.J.A.C. 7:15-5.25(e), in which an Appellate Division panel, interpreting the Freshwater Wetlands Protection Act, defined "habitat" to include "the environment in which an organism or biological population usu[ally] lives or grows" and "areas in which species can be expected to live based on past sightings."  420 N.J. Super. 552, 569 (App. Div.) (alteration in original) (internal quotation marks omitted) (citing In re Adopted Amendments to N.J.A.C. 7:7A-2.4, 365 N.J. Super. 255,

15

261, 266 (App. Div. 2003)), certif. denied, 208 N.J. 597 (2011).

Based on Slachetka's testimony that there were snake fencing and

tunnels, which are commonly used protective devices to restrict

and redirect the paths of snakes, on plaintiffs' property, the

court concluded that the property was part of a habitat, or a

potential habitat, for endangered species, rendering its

inclusion as part of a contiguous whole not arbitrary or

unreasonable.

Concluding that the Ordinances fulfilled the four criteria

established in Riggs, supra, 109 N.J. at 611-12, the trial court

dismissed plaintiffs' entire complaint.  The court later

reinstated plaintiffs' inverse condemnation claim and ultimately

granted the Township's motion for summary judgment, holding that

it was not clear that an application for a variance would be

futile.  The trial court's judgment held open the opportunity

for plaintiffs to pursue an inverse condemnation claim if a

variance were to be sought and denied.

Plaintiffs appealed both decisions, and the Appellate

Division reversed in an unpublished opinion.  The panel held

that the Ordinances were invalid as applied to plaintiffs

because "the downzoning is not required to serve the stated

purposes of the [O]rdinances and does not reflect reasonable

consideration of existing development in the areas where the

subject property is located."  The panel noted that "[t]he

16

subject property does not contain any environmentally distinct features such as wetlands, floodplains, steep slopes, or open waters.  There are no threatened or endangered species located on the subject property and no past sightings have occurred." The panel further reasoned that a broad interpretation of "habitat" in a case under the Freshwater Wetlands Protection Act was irrelevant to the case at bar.

Additionally, the Appellate Division stated that the Township could not rely on the PA-5 designation of the property to justify the Ordinances because "the State '[P]lan is not intended to validate or invalidate any municipal code or zoning ordinance,'" citing Mount Olive Complex v. Township of Mount Olive, 340 N.J. Super. 511, 541 (App. Div. 2001) (alteration in original).  The panel concluded that "[i]n view of the nearby residential development and the absence of any significant environmental constraints upon development, the limitation of potential future residential development of the subject property to one unit per twenty acres is arbitrary and unreasonable." Because the panel concluded that the Ordinances were invalid as applied to plaintiffs, it did not reach plaintiffs' inverse condemnation claim.

We granted the Township's petition for certification.  217 N.J. 285 (2014).  We also granted the motions of the Pacific Legal Foundation (Pacific) and the New Jersey Builders

Association (NJBA) to participate as amici curiae.

II.

A.

The Township maintains that the Appellate Division erred by failing to consider that the Ordinances were part of a comprehensive scheme for establishing a town center, protecting the Township from sprawl and, in a coordinated fashion, preventing the destruction of contiguous areas of inter-related and undeveloped sensitive natural resources.  The Township argues that the EC district -- including plaintiffs' property, which is upland and contiguous to land comprising a comprehensive coastal ecosystem -- represents, as found by DEP, "the last, largely undeveloped tracts of forest in the Township east of the [Parkway] and west of Route 9."  The Township asserts that applying the Ordinances to plaintiffs' property is consistent with the Township's goal of preventing habitat fragmentation in order to maintain coastal ecosystems, of which plaintiffs' property is an integral part.  The Township also contends that the Appellate Division based its decision on an excessively narrow reading of its own decision in In re Adoption of N.J.A.C. 7:15-5.24(b) & N.J.A.C. 7:15-5.25(e), supra, 420 N.J. Super. 552.

Plaintiffs contend that the inclusion of the subject property in the EC district is unreasonable because the subject

18

property has no environmentally sensitive characteristics. Plaintiffs maintain that the subject property "does not contain any open waters, wetlands, floodplains, steep slopes, or DEP documented [threatened and endangered species] habitat[s]." They contend that the Township "must adequately justify the severe development restrictions placed upon the [s]ubject [p]roperty via the EC [district] by pointing to a concrete, environmentally sensitive characteristic present on the [s]ubject [p]roperty, and not mere speculation."

Plaintiffs also assert that they have "no administrative remedy to exhaust because any attempt to deviate from the EC [district]'s requirements will become an exercise in futility." According to plaintiffs, they cannot establish "the positive or negative criteria necessary to obtain relief from the EC [district]," the Township's Board of Adjustment does not have the authority to grant a variance, and a variance would amount to illegal zoning by variance under N.J.S.A. 40:55D-70. Hence plaintiffs claim exemption from any duty to exhaust administrative remedies.

B.

The amici support plaintiffs' arguments. Pacific argues that the downzoning of the subject property unconstitutionally forces plaintiffs to "bear the burden of protecting open space on behalf of the entire community." Pacific maintains that the

19

Township must compensate plaintiffs because it failed to demonstrate that the Ordinances were actually concerned with protecting environmentally sensitive areas, and contends that the desire to maintain open space is an insufficient justification to render a zoning ordinance reasonable. Pacific also asserts that plaintiffs are not required to seek a variance or otherwise exhaust their administrative remedies.

Similarly, NJBA argues that a private landowner must be paid for limiting property to an open space use; the desire to preserve open space alone is not a proper justification to support a zoning ordinance so restrictive of private property. Further, NJBA contends that "the creation of . . . open space opportunities cannot come in the name of protecting environmental features and/or conditions that do not exist on a given property," and maintains that plaintiffs' property does not have the environmental features that the Ordinances claim to preserve or protect. NJBA also contends that the Township's reliance on its efforts to seek town-center status and plan endorsement from the State is misplaced; the State Plan, and related general-planning guides, are not sound bases for supporting the validity of a zoning ordinance. Finally, NJBA argues that plaintiffs are not required to exhaust their administrative remedies by seeking a variance before seeking relief from the Ordinances in court.

III.

The power to zone is fundamentally an exercise of the State's police power.  Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp., 80 N.J. 6, 20 (1976), appeal dismissed and cert. denied, 430 U.S. 977, 97 S. Ct. 1672, 52 L. Ed. 2d 373 (1977). The 1947 New Jersey Constitution vested that power in the Legislature and authorized the Legislature to delegate the zoning power to municipalities.  N.J. Const. art. 4, § 6, ¶ 2; see Rumson Estates, Inc. v. Mayor of Fair Haven, 177 N.J. 338, 349 (2003).  The Legislature has delegated zoning power to municipalities with the enactment of the MLUL, N.J.S.A. 40:55D-1 to -163, "a comprehensive statute that allows municipalities to adopt ordinances to regulate land development 'in a manner which will promote the public health, safety, morals and general welfare' using uniform and efficient procedures."  Rumson Estates, supra, 177 N.J. at 349 (quoting Levin v. Twp. of Parsippany-Troy Hills, 82 N.J. 174, 178-79 (1980)).

Courts recognize certain well-established principles when adjudicating a challenge to a zoning ordinance's validity.

> Most fundamental is that a zoning ordinance is "insulated from attack" by a presumption of validity.  The party challenging the ordinance bears the burden of overcoming that presumption.  Reviewing courts should not be concerned over the wisdom of an ordinance.  If debatable, the ordinance should be upheld.
>
> [Id. at 350-51 (citations omitted).]

21

That said, an ordinance must not be inconsistent with state or federal constitutional requirements or other preempting legal authority. Id. at 351. Furthermore, a zoning ordinance must conform to MLUL requirements and further MLUL goals. See Rumson Estates, supra, 177 N.J. at 351 (citing William M. Cox, New Jersey Zoning and Land Use Administration, § 37-4 at 837 (2003)); Riggs, supra, 109 N.J. at 611; see also N.J.S.A. 40:55D-2. To facilitate judicial review of challenges to municipal zoning ordinances, Riggs established a four-part, objective test for an ordinance's validity:

> First, the ordinance must advance one of the purposes of the [MLUL] as set forth in N.J.S.A. 40:55D-2. Second, the ordinance must be substantially consistent with the land use plan element and the housing plan element of the master plan or designed to effectuate such plan elements, unless the requirements of that statute are otherwise satisfied. Third, the ordinance must comport with constitutional constraints on the zoning power, including those pertaining to due process, equal protection, and the prohibition against confiscation. Fourth, the ordinance must be adopted in accordance with statutory and municipal procedural requirements.
>
> [Id. at 611-12 (citations and internal quotation marks omitted).]

Guided by that test and the well-established principles applicable to challenges to municipal zoning ordinances, we turn to the Ordinances involved in this matter.

IV.

22

A.

In this appeal from a non-jury trial, we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). Reviewing appellate courts should "not disturb the factual findings and legal conclusions of the trial judge" unless convinced that those findings and conclusions were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484 (citation and internal quotation marks omitted); see, e.g., Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011) (stating same). Conclusions of law are subjected to the normal de novo review on appeal. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Here, the trial court determined that the Ordinances' creation of the EC district, and the inclusion of plaintiffs' property in the newly zoned EC district, was a valid exercise of zoning power. The trial court made a number of important findings in reaching its conclusion.

In examining their overall validity, the trial court found that the Ordinances represented the culmination of a comprehensive land-use planning process that included a makeover of the Township's Master Plan. In the words of the trial court,

23

the Township engaged in a "global and comprehensive undertaking" to adopt and employ smart growth principles and to create and obtain the designation of a Waretown Town Center. The trial court determined that the Township pursued sound land-use planning objectives when it decided to concentrate development near the Waretown Town Center while simultaneously preserving and protecting environmentally sensitive regions on the periphery of the Township. Specifically, the trial court tied its findings to the Riggs test and to MLUL goals when assessing the reasonableness of the Ordinances.

In addressing the four Riggs factors, the court summarily found that there was no challenge to the fourth factor. That factor required the Ordinances to be adopted in accordance with statutory and municipal requirements. The trial court proceeded to make detailed findings from the record evidence with respect to the remaining factors:

> [As to the first Riggs factor, t]he Township's planner Slachetka provided credible testimony that the [O]rdinances advanced several purposes of the MLUL. These purposes included the promotion of smart growth, prevention of sprawl and provisions for light, air and open space. Other purposes advanced included the support for state and regional planning goals, establishment of appropriate population densities and the conservation and preservation of environmentally sensitive lands with the development of the Waretown Town Center. [As to the second Riggs factor, t]he court finds that the ordinances were "substantially

24

consistent with the Land Use Plan Element and Housing Plan Element of the Master Plan which under the Town Center proposal also included provisions for affordable housing. The Township planner also provided credible testimony that satisfied the third criterion [of the Riggs test] in that the ordinances did not focus on a single property owner or even a group of property owners. Slachetka's report in evidence listed the ten largest property owners in the EC [district] with acreage ranging from 13.17 acres to 292.76 acres. The Township pointed out the property west of the Parkway within Pinelands jurisdiction is also restricted to one dwelling for every 20 acres. The zoning schemes were part of a comprehensive plan and planning process which assessed the character of each of the districts consistent with long-range smart growth planning policies. This is evident by virtue of the efforts undertaken by the Township in its petition for Plan Endorsement for designation of Waretown as a "Town Center."

. . . .

[In sum, t]he court finds that Ocean Township undertook a deliberative and comprehensive planning effort that spanned several years to achieve its desired [M]aster Plan. The process embraced smart growth and planning from a local and regional approach at all levels of government. Ordinance 2006-34 was designed to provide the "foundation for implementation of the Township's proposed Waretown Town Center as well as proposed land use goals, environmental goals, housing needs, open space goals, circulation, parking, design, economic development and utility infrastructure goals." As a result, Chapter 18 was amended to include a new Chapter 18-21 entitled "EC Environmental Conservation District" which limited development in that district to one residential dwelling for every 20 acres. [T]he EC [d]istrict corresponded to those environmentally sensitive areas outside

25

> of and west of the EC [d]istrict and the Waretown Town Center, as well as east of the [Parkway]. The intent of the EC [d]istrict was to provide the low density environs of the Center and permit only very low density residential development for the protection and conservation of natural resources as a principle objective.

The trial court's analysis properly adhered to the Riggs criteria, and its findings as to each criterion were grounded on substantial and credible evidence presented. The court's factual findings supported its determination that the Ordinances complied with the MLUL requirement of consistency between zoning ordinances and a town's master plan. N.J.S.A. 40:55D-62. Further, those findings indicated that the Ordinances advanced the following MLUL goals: "[t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare," N.J.S.A. 40:55D-2(a); "[t]o provide adequate light, air and open space," N.J.S.A. 40:55D-2(c); and "[t]o ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole," N.J.S.A. 40:55D-2(d).

Consistent with its responsibilities in a bench trial, the court clearly and thoroughly explained the record bases for its findings and conclusions in this case. We defer to the soundly

26

based determination that all of the Riggs factors were satisfied and that the challenged Ordinances are valid. Furthermore, the court found that the Ordinances advanced goals separate and in addition to the identified MLUL goals. It concluded that the Ordinances were consistent with the Township's Master Plan, planning objectives embodied in the State Plan, and other land-management and environmental laws and regulations. While the court did not refer to the latter as justification for finding the Ordinances reasonable and valid, the Ordinances' compliance with such other land-use planning measures neither renders them invalid under the MLUL nor arbitrary or unreasonable.

B.

The trial court further determined that the Township's inclusion of plaintiffs' property in the EC district, with its attendant restrictions, was "reasonably related and calculated to achieve the purposes of the challenged zoning ordinances." However, the Appellate Division reached a contrary determination on plaintiffs' as-applied challenge, finding that there was no evidence of threatened or endangered species on the subject property and that the property lacked specific environmental constraints, such as "wetlands, flood plains, steep slopes, [or] open waters." Those arguments were advanced before the trial court and rejected; the Appellate Division reversed the trial court's judgment on those bases and ordered plaintiffs' property

27

returned to the zoning it enjoyed before creation of the EC district.

As to the Appellate Division's determination based on plaintiffs' as-applied challenge, differing reasoning leads us to reverse the appellate judgment.

The appellate panel employed an overly narrow view of the Township's land-use planning goals by insisting that evidence in the record must show the presence of endangered species or certain specific environmental conditions on plaintiffs' property. At trial, Slachetka explained that the Ordinances had been developed as part of a smart growth approach intended to concentrate sustainable development in a core region of the Township and thereby reduce sprawl. Equally important, restricting development to the concentrated town-center area would simultaneously protect extended corridors of open space, identified by the DEP as preciously unique forested coastal uplands, and it would prevent habitat fragmentation and avoid the risk of its loss in an environmentally sensitive coastal area. Thus, contrary to plaintiffs' and amici's arguments, the rezoning that occurred in the Township and that included a downzoning of plaintiffs' property cannot fairly be distilled to the assertion that this constituted the creation of open space for the sake of having open space in the community.

28

Slachetka's testimony demonstrated that, in particular, the entire EC district was formed to "correspond[] to those environmentally sensitive areas lying outside of and to the west of the Waretown Town [C]enter and east of the Parkway."  To help demonstrate the environmentally sensitive nature of the plaintiffs' property and related environment surrounding it -- which plaintiffs' property connected and made contiguous -- Slachetka drew support from DEP's determination that designating the proposed Environmentally Sensitive Planning Area "will aid in the preservation of a large contiguous ecosystem that drains to Barnegat Bay, a keystone environmental and economic resource for Southern New Jersey."  See 39 N.J.R. 768(b).  As Slachetka noted, when performing its regulatory approval responsibility as part of the multi-agency review involved in the Township's Town Center planning process, the DEP further concluded that

> the delineated community development boundaries put forth by Ocean Township encompass existing and planned development and redevelopment, and recognize the extent of environmentally sensitive lands and waterways.  The designated Waretown CAFRA Town Center and changed State Plan Policy Map designations concentrate the pattern of coastal residential, commercial and resort development and better protect vulnerable coastal uplands and wetlands.

> [Ibid.]

Plaintiffs consistently argued that their property contained neither evidence of any endangered species, nor open

29

waters, wetlands, flood plains, or steep slopes.  However, the record indicates that that was not the justification for the Township's objectives as presented to the many reviewing agencies when achieving Town Center status and adopting its Ordinances pursuant to MLUL goals.  The Township has not asserted that each and every parcel included in the EC district is included because it contains evidence of some endangered species or the specific environmental conditions set forth by plaintiffs.  Nor must it do so in order to justify its planning objective from an environmental public welfare standpoint.

Plaintiffs' property's inclusion in the EC district must be measured against the Township's actual objectives in enacting the Ordinances.  The Township planned to create a contiguous tract, or corridor, of environmentally related, sensitive coastal uplands in order to preserve and protect coastal habitat and ecosystems and to provide a buffer for its corresponding intention to promote smart growth in a sustainable, concentrated town center.  As the DEP approval noted, the protection of vulnerable coastal uplands is a legitimate environmental-welfare concern.  The Township repeatedly emphasized its broad planning objective to protect a sensitive coastal ecosystem through the preservation of large areas of undisturbed, contiguous habitat, which included plaintiffs' property.  The record developed by the Township supported that much of the area surrounding the

30

subject property is undeveloped or undevelopable, and that the land west of the Parkway in the neighboring town is similarly zoned for residential use, one unit per twenty acres. Those facts supported the Township's assertion, and the trial court's findings and conclusion, that the property was appropriately zoned to achieve the goal of promoting smart, sustainable growth through concentrated development in the Waretown Town Center, with a robust "green belt" in the outer areas of the Township.

Based on the record, which included Slachetka's testimony about the ecosystem of which plaintiffs' property was a part, as well as evidence showing that plaintiffs' property connected and was related to other undeveloped forested properties that constituted habitat for endangered snakes and other wildlife, the trial court acted within its authority when concluding that designating plaintiffs' property as part of the EC district was not arbitrary or capricious.[3] We defer to the trial court's conclusion that the use and density restrictions placed on the property by the Ordinances reasonably furthered the goal of providing "low density environs" outside of the Waretown Town

---

[3] It also bears noting that plaintiffs failed to proffer any expert evidence to support their claims that habitat differences should have resulted in different treatment of their property in the EC district zoning determination, notwithstanding that plaintiffs bore the burden of proving the Ordinances were arbitrary and capricious for their inclusion of plaintiffs' property in the EC district.

31

Center and of permitting "only very low density residential development for the protection and conservation of natural resources."

To the extent that the Appellate Division also found that the Ordinances were invalid as applied to plaintiffs because "the downzoning . . . does not reflect reasonable consideration of existing development in areas where the subject property is located," we note the trial court's reasonable determinations are entitled to deference and that the zoning Ordinances enjoy presumptive validity. The record contained support for the trial court's rejection of plaintiffs' request that these presumptively valid Ordinances be invalidated as applied to them on this basis. Moreover, we accept and find important in this analysis that the trial court determined that the Ordinances were not designed specifically to inhibit development on the plaintiffs' property. However, plaintiffs may raise this argument in a request for relief from the rezoning through a variance application, the procedure better suited to address that issue.

C.

It bears emphasizing that this case exemplifies the salutary effects to be derived from adherence to the doctrine of exhaustion of administrative remedies. See R. 4:69-5. That doctrine generally requires landowners to pursue available

administrative remedies prior to bringing as-applied challenges to zoning ordinances.

In this matter, plaintiffs and amici argue that plaintiffs were not required to exhaust their administrative remedies by seeking a variance before initiating their as-applied challenge to the Ordinances. In support, they cite Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282 (2001), cert. denied, 535 U.S. 1077, 122 S. Ct. 1959, 152 L. Ed. 2d 1020 (2002), in which this Court invalidated an ordinance as applied to the plaintiff's property without requiring the plaintiff to first seek variance relief. See id. at 294 (stating that there was "no justification for requiring plaintiff to seek variance relief"). Despite our conclusion in that case, Pheasant Bridge should not be read to suggest that a landowner challenging an ordinance as applied to his or her property is excused from first exhausting administrative remedies. To the contrary, a landowner who wishes to challenge the validity of an ordinance as applied must normally exhaust administrative remedies by seeking a variance before initiating an action at law.

Rule 4:69-5 imposes a duty to exhaust administrative remedies before initiating actions at law "[e]xcept where it is manifest that the interest of justice requires otherwise." As previously explained, "the exhaustion of remedies requirement is a rule of practice designed to allow administrative bodies to

33

perform their statutory functions in an orderly manner without preliminary interference from the courts." Brunetti v. Borough of New Milford, 68 N.J. 576, 588 (1975). Therefore, there is "a strong presumption favoring the requirement of exhaustion of remedies." Ibid. Nonetheless, the requirement of exhaustion is not absolute and "[e]xceptions are made when the administrative remedies would be futile, when irreparable harm would result, when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision." N.J. Civil Serv. Ass'n v. State, 88 N.J. 605, 613 (1982) (citing Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 561 (1979)).

This Court has applied those principles to landowner challenges to the validity of municipal zoning ordinances. See AMG Assocs. v. Twp. of Springfield, 65 N.J. 101, 109 n.3 (1974) ("[R]elief should first be sought by way of variance under N.J.S.A. 40:55-39(d), for in such situations the local administrative agencies can generally adequately deal with the problem."); Bow & Arrow Manor, Inc. v. Town of W. Orange, 63 N.J. 335, 350 (1973); Deal Gardens, Inc. v. Bd. of Trs. of Loch Arbour, 48 N.J. 492, 497-98, (1967) ("[A] court should 'ordinarily' decline to adjudicate the attack upon the ordinance until the owner has exhausted his remedy before the board of adjustment."); Kozesnik v. Twp. of Montgomery, 24 N.J. 154, 183

34

(1957); <u>Conlon v. Bd. of Pub. Works of Paterson</u>, 11 <u>N.J.</u> 363,

369-70 (1953); <u>Fischer v. Twp. of Bedminster</u>, 11 <u>N.J.</u> 194, 206

(1952) ("If the plaintiff is dissatisfied with the application

of the zoning laws to his particular property, he may apply to

the board of adjustment for a variance.").  Specifically, in as-

applied challenges, we have held that landowners generally have

an obligation to exhaust their administrative remedies by first

applying for a variance:

> [When a] zoning ordinance is not claimed to be
> invalid in its entirety but only to be
> arbitrary and unreasonable in its application
> to the owner's land, and relief in that
> circumstance may be obtained from a local
> board of adjustment, the trial court should
> ordinarily decline to adjudicate an attack
> upon the ordinance until after the owner has
> exhausted his remedy to seek relief from the
> local board of adjustment.

> [<u>Conlon</u>, <u>supra</u>, 11 <u>N.J.</u> at 370.]

The variance process is particularly well suited to

determining whether an otherwise valid ordinance creates a

hardship as applied to a particular property.  Well-respected

land-use commentators have explained the reasons for courts'

adherence to the exhaustion requirement until after completion

of the variance process:

> The variance process exists for the very
> purpose of determining whether the ordinance,
> adopted for legitimate purposes, creates a
> hardship when applied to a particular
> property.  This is central to the entire
> structure of the MLUL; that local boards, with

35

their unique perspective on local conditions, are in the best position to understand how most reasonably to alleviate the hardships that arise under an otherwise legitimate zoning ordinance, in particular cases and pertaining to particular properties. Interposing a court's judgment before allowing this process to go forward amounts to an arrogation of power that the [L]egislature has delegated, through the MLUL, to local governing units.

[William M. Cox & Stuart R. Koenig, New Jersey Zoning and Land Use Administration, § 35-5 at 888 (2014).]

Consistent with general exhaustion doctrine, where "past events or other circumstances make it clear that initial or further resort to the local administrative process would be futile," a landowner may bypass the administrative process and pursue an as-applied challenge at law. See AMG Assocs., supra, 65 N.J. at 109 n.3. Thus, notwithstanding Pheasant Bridge, supra, 169 N.J. 282,[4] landowners challenging the validity of a municipal ordinance as to their property should normally first seek a variance in accordance with these principles.

In this case, applying the exhaustion principles articulated above, plaintiffs should have first sought a variance before pursuing either an as-applied challenge or an inverse condemnation claim because none of the exceptions to the

---

[4] In Pheasant Bridge, supra, cessation of the dispute played a significant role in the procedural handling of the matter and exhaustion of remedies was not an overt issue in the appeal. 169 N.J. at 294.

exhaustion doctrine apply. Indeed, when dismissing plaintiffs' inverse condemnation action, the trial court specifically commented that it had no basis for concluding that an application for administrative relief would be futile. The Township made similar representations to this Court during oral argument. Its counsel stated that there is no reason to assume that any application by plaintiffs for a variance would be an exercise in futility. In the absence of clear evidence that administrative relief is foreclosed to plaintiffs, exhaustion of such relief is the remedy that is best. Thereafter, an inverse condemnation action will be the appropriate vehicle for relief to plaintiffs if their application for a variance is for naught. We recognize that, at the end of the day, plaintiffs may well be entitled to relief through the variance or inverse condemnation process.

V.

The judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE LaVECCHIA's opinion. JUDGE CUFF (temporarily assigned) did not participate.

37

SUPREME COURT OF NEW JERSEY

NO.   __A-55__                           SEPTEMBER TERM 2013

ON CERTIFICATION TO ____Appellate Division, Superior Court____


THOMAS GRIEPENBURG and CAROL
GRIEPENBURG,

     Plaintiffs-Respondents,

           v.

TOWNSHIP OF OCEAN,

     Defendant-Appellant,

       and

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION and STATE OF NEW
JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS,

     Defendants.


DECIDED            January 22, 2015
_____
      Chief Justice Rabner                PRESIDING

OPINION BY            Justice LaVecchia

CONCURRING/DISSENTING OPINIONS BY  _____

DISSENTING OPINION BY  _____

| CHECKLIST | REVERSE AND REINSTATE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | ---------------------- | --------------------- |
| TOTALS | 6 | |