**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3536-23

IN THE MATTER OF THE
APPEAL OF THE DENIAL OF
AN APPLICATION FOR A
PERMIT TO CARRY A
HANDGUN BY APPLICANT,
D.D.[1]

_____

Submitted November 3, 2025 – Decided January 13, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. GA-005-23.

The Tormey Law Firm, attorneys for appellant D.D. (Louis J. Keleher, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey (Timothy Kerrigan, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

_____

[1]  We refer to petitioner by initials based on the medical records and reports referenced in this appeal.  R. 1:38-3(a)(2).

Petitioner D.D. appeals from a Law Division order denying his application for a permit to carry a handgun and granting the State's application to revoke his Firearms Purchaser Identification Card ("FPIC"). Petitioner also raises a constitutional challenge to N.J.S.A. 2C:58-3(c)(5). Based on our determinations which follow, we affirm the trial court's order and further reject petitioner's challenge to the constitutionality of the statute.

I.

In March of 2023, petitioner applied to the Paterson Police Department ("PPD") for a permit to carry a handgun. The application contained several questions and, relevant to this appeal, specifically required answers to two questions regarding petitioner's prior mental health history/treatment. The first question asked:

> Have you ever been confined or committed to a mental Institution or hospital for treatment or observation of a mental or psychiatric condition on a temporary, Interim or permanent basis? If Yes, give the name and location of the institution or hospital and the date(s) of such confinement or commitment.

The second question asked:

> Have you ever been attended, treated or observed by any doctor or psychiatrist or at any hospital or mental institution on an in-patient basis for any mental or psychiatric conditions? If Yes, give the name &

location of the doctor, psychiatrist, hospital or institution and the date(s) of such occurrence.

Petitioner answered "No" to both questions. The application was denied by the Chief of the PPD based on "public health safety and welfare" as well as "medical, mental or alcoholic background." The "Firearms Investigation Unit" also found petitioner falsified his application.

Petitioner appealed from the denial to the Law Division. In response, the State moved to revoke his FPIC. Prior to the hearing, the court entered an order for the production and in-camera review of petitioner's mental health records from two medical facilities previously disclosed by petitioner.

The court held an evidentiary hearing on both petitioner's appeal of the denial of his application for a carry permit and the State's application to revoke his FPIC. In addition to psychiatric records, the State offered testimony from retired Clifton Police Department ("CPD") Sergeant John Cusack and PPD Detective Keith Rotsaert.

Sergeant Cusack testified he was the investigator assigned to petitioner's 2004 firearms applications, which were both granted. When asked why he recommended the application for approval, despite the alleged "falsified" answers, Sergeant Cusack stated:

3

It was missed. . . I have no absolute answer.  I mean, if
[] I had seen it, [] but for some reason it was missed.  If
I had seen it, we would have addressed the fact that it
was—you know, falsified.

Sergeant Cusack stated there "probably" would have been a different outcome, but he could not definitively state so.

Sergeant Cusack was also the investigator assigned to petitioner's two 2014 carry permit applications which were both denied.  Sergeant Cusack testified he ran a mental health check through the Passaic County adjustor and learned petitioner had either been committed or treated with a mental health professional two separate times.  He also learned petitioner did not live at the address he listed on his application form.  For those reasons, he recommended petitioner's application to be denied, which the CPD chief concurred.

Detective Rotsaert testified he conducted the investigation regarding petitioner's 2023 application for a permit to carry a handgun.  Detective Rotsaert consulted the County Adjustor's Office, which returned with a "mental health hit."  Detective Rotsaert also testified about petitioner's application which represented his occupation was a part of the PPD despite the fact that he was employed by the Paterson Office of Emergency Management ("OEM").  He testified the OEM is not a division of the department and to his knowledge, never has been.  He stated OEM officers are unpaid, do not attend police academy, are

not sworn officers, and are not permitted to carry firearms as part of their OEM duties. He denied petitioner's application based on these reasons.

Petitioner also testified on his own behalf. He stated he checked himself into the hospital due to workplace issues related to sexual harassment. He testified he was not legally committed and went on his own volition to both medical/mental health facilities. He denied stating he ever wanted to harm himself or threatening staff, as that was "not [him] at all."

Petitioner explained he answered the two questions regarding his mental health treatment as "No" because he thought the questions referred specifically to "commitment," not voluntary hospitalization. He stated he believed his answers to be truthful based upon his understanding of commitment. He testified that following the 2013 denial of his application for a permit to carry, he hired a lawyer who suggested he file for an expungement of his medical records. He explained he didn't understand why, because "there wasn't a commitment" but followed through with it.

Regarding his employment, he testified he held a law enforcement position in the Paterson OEM Police Division and he was given the power of arrest. He testified he arrested someone years ago, although he did not recall

what crime or offense the person had committed. He testified he was aware he had listed a "volunteer job" under occupation.

In an oral decision, the court found petitioner should have answered the two mental health questions on the applications as "yes" instead of "no." The court expressed its concern about petitioner's ability to safely own firearms, given his inconsistent and sometimes unclear responses in reference to "legal requirements," and because he did not present any "current, thorough psychiatric evaluation" that "would convince" the court he is fit to carry a firearm.

The court specifically concluded:

> I find that [petitioner's] response to several questions . . . simply [do] not make a whole lot of sense . . . which is reading a question that is on the application, and understanding what [petitioner] understood to be as a commitment versus being treated.
>
>     . . . .
>
> And for him to interpret that "I have the power to chase somebody to arrest," and it's his understanding that because [an] OEM logo happens to be with the [PPD], . . . somehow he's associated with the [PPD], . . . it gives me a pause. It gives me a concern. It gives me a concern that [petitioner has] issues. I am concerned. I am concerned how this individual, given a gun, would interpret the laws, what the gun requires him to do, and the responsibility. I am troubled . . . I am scared that this individual, who has letters from other psychiatrists, . . .—one of the psychiatrists provides on a prescription blank where the person who is signing and the person

6

whose name—[petitioner's] name appears [to be] different individual. Again, I'm not concluding there was some fabrication. There are two doctors' reports. One [doctor] indicates that he concludes that he's not concerned about [petitioner] owning a gun, having a gun. But his treating psychiatrist was so concerned that he wrote a note, got the consent of the mother, got the consent of the respondent, and he did not want him to have access to the guns. Years later, what happens? [Petitioner] applies for a change of address and wants to now continue to possess the gun. This is the dilemma that I am dealing with and that is, I have no letter from an expert on his behalf who has done a thorough evaluation as to the present circumstances to convince me that [petitioner] and his responses, what he indicated in the court, he has no clear indication of what the length of his treatment was, he cannot recall it.

. . . .

So for all of those reasons, . . . I am denying the application, and I am approving the denial by the Paterson P.D. And I am also [granting] . . . the [FPIC] revocation application that has been filed by the State.

Thereafter, the court entered orders (1) affirming the PPD's decision denying petitioner's application for a permit to carry a handgun; and (2) granting the State's application to revoke petitioner's FPIC.

On appeal, petitioner asserts the following points.

POINT I[2]

THE TRIAL COURT COMMITTED REVERSIBLE ERROR, WHEN IT ENTERED A DECISION IMPROPERLY (1) DENYING APPELLANT'S APPEAL OF THE PATTERSON POLICE CHIEF'S DENIAL OF HIS APPLICATION FOR A PERMIT TO CARRY A HANDGUN, AND (2) GRANTING THE STATE'S MOTION TO REVOKE APPELLANT'S NEW JERSEY FIREARMS PURCHASER IDENTIFICATION CARD.

POINT II

N.J.S.A. 2C:58-3(C)(5) IS VAGUE, OVERBROAD, AND VIOLATES U.S. SUPREME COURT CASELAW.

II.

A judicial determination concerning the granting, renewal, and revocation of an FPIC is governed by N.J.S.A. 2C:58-3(f). Pursuant to N.J.S.A. 2C:58-3(f), an FPIC "shall be void if the holder becomes subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]." Furthermore, "[a]ny firearms purchaser identification card may be revoked by the Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit."

---

[2] We have reconstituted petitioner's point headings to delete his point related to the applicable standard of review.

N.J.S.A. 2C:58-3(f). A county prosecutor, a chief of police, or any citizen "may apply to the court at any time for the revocation of the card." Ibid. "The State must prove, 'by a preponderance of the evidence, that forfeiture is legally warranted.'" Matter of M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 197 (App. Div. 2023) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 508 (2016)).

If the State proves that the firearms owner or FPIC licensee is subject to any of the disabilities set forth in N.J.S.A. 2C:58-3(c) by a preponderance of the evidence, a trial court may order the forfeiture and revocation. N.J.S.A. 2C:25-21(d)(3); F.M. 225 N.J. at 508. A judicial determination in an application to carry a weapon that finds a petitioner poses a threat to the public health, safety, and welfare is a fact-sensitive analysis. F.M., 225 N.J. at 505.

The scope of our review is limited in both a denial of an application to carry permit and a revocation of an FPIC. "[W]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). "Reviewing appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and

conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). However, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "Questions of law receive de novo review." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citing Manalapan Realty, L.P., 140 N.J. at 378).

## III.

Initially, we address petitioner's appeal challenging the revocation of his FPIC. The trial court found the evidence showed defendant had a disqualifying disability under N.J.S.A. 2C:58-3(c)(5) which states in pertinent part:

> A handgun purchase permit or [FPIC] shall not be issued:
>
> . . . .
>
> (5) To any person where the issuance would not be in the interest of the public health, safety[,] or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm[] . . . .

[Ibid.]

We conclude the trial court's findings and reasoning were not an abuse of discretion as there was substantial, credible evidence in the record supporting its determinations. Petitioner's testimony was essentially found to be "concerning" by the trial court because petitioner's answers were illogical and not consistent with the medical records. We conclude the trial court utilized careful and respectful wording in finding petitioner's answers of "no" to these inquiries were inaccurate. From our review of the record, we determine the petitioner's answers were clear misrepresentations when considering the extent of his significant prior mental health treatment at the two facilities.

We further concur with the trial court's concerns based on the inaccurate representations in his application, then repeated at trial, claiming he was a member of the PPD because his OEM uniform patch displayed PPD on it. We concur with the trial court's concerns that petitioner, an OEM officer, was attempting to bolster his application by making a disingenuous representation that he is employed in law enforcement when he knew his position with the OEM was not law enforcement.

We additionally conclude the trial court's concerns regarding petitioner's failure to provide a recent psychiatric evaluation were appropriate. These

11

concerns, which supported the court's denial order was not an abuse of discretion. We conclude the evidence in the record showing petitioner failed to provide a current psychiatric evaluation was an appropriate ground supporting the trial court's denial order.

Because our factual and legal analysis concerning petitioner's application for a carry permit is identical, we conclude the trial court's reasons for denying a permit were also not error.

IV.

Petitioner's final point on appeal, not raised below, contends N.J.S.A. 2C:58-3(C)(5) is vague, overbroad, and violates U.S. Supreme Court caselaw. Although this point was clearly not raised below, when considering such, we conclude this argument has no merit. We previously determined N.J.S.A. 2C:58-3(c)(5) is not incongruous with the Court's holding in Bruen.[3]  See M.U., 475 N.J. Super. at 194 (upon performing a detailed Bruen analysis, concluding N.J.S.A. 2C:58-3(c)(5) is constitutional because "it is . . . well-rooted in the nation's history and tradition of firearm regulation that individuals whose armament poses a risk to 'public health, safety[,] or welfare,'" are "beyond the ambit of 'the people' protected by the Second Amendment");  see also In re

---

[3]  N.Y. State Rifle and Pistol Association v. Bruen, 597 U.S. 1 (2022).

Appeal of the Denial of R.W.T, 477 N.J. Super. 443, 454 (App. Div. 2023) ("reject[ing] a facial challenge to the constitutionality of the 'public health, safety[,] or welfare' disqualification criterion").

To the extent we have not specifically addressed any of petitioner's remaining legal arguments we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division