**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3437-18T4

CORES & ASSOCIATES, LLC,

     Plaintiff-Respondent,

v.

ROBERT ORLOWSKI,

     Defendant-Appellant.

_____

          Argued December 4, 2019 – Decided January 24, 2020

          Before Judges Koblitz, Whipple and Mawla.

          On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-018969-18.

          Robert Orlowski, appellant, argued the cause pro se.

          Cores & Associates LLC, respondent pro se (Amy Sara Cores, on the brief).

PER CURIAM

Defendant Robert Orlowski appeals from the February 27, 2019 order of the Special Civil Part awarding plaintiff $13,931.63 after a bench trial. Having reviewed the record, we affirm.

Plaintiff[1] is a law firm that represented defendant in an appeal after defendant executed a retainer agreement on April 14, 2018. The retainer agreement was signed by Amy Sara Cores and defendant, and the firm performed legal services including filing an appellate brief.

In October 2018, defendant sent plaintiff an email refusing to pay a monthly invoice. Defendant asked plaintiff to "stop sending fraudulent invoices. I expect [a] full refund and detailed report about fraudulent activities in my case sent to [the] [Federal Bureau of Investigation] . . . as soon as possible. I would like to remind [you] that your office failed to represent me in [an] ethical way." Defendant also stated he did not receive a copy of a "fixed appeal filed in [a]ppellate [c]ourt by someone in my name without my knowledge and authorization." Defendant further asked for a short meeting of fifteen minutes maximum.

---

[1] Defendant retained Cores and Associates, LLC and Amy Sara Cores is its principal. We refer to both the firm and Ms. Cores as plaintiff.

A-3437-18T4

In response, plaintiff sent defendant a letter acknowledging receipt of his email, stating the office had made "multiple attempts to contact" defendant by calling, writing, and emailing him, but had gotten no response. Plaintiff confirmed her office had filed an appellate brief, asserting it was "common that the client does not review this document before it is filed. However, we needed to meet a court[-]imposed deadline and you were not communicating with this office." Included in the correspondence was a substitution of attorney defendant could sign if he was unhappy with their services, but the letter advised him he still owed a balance on his account. The letter indicated that "there will be no appointment scheduled with this office until the bill is paid in full."

The initial retainer for the appeal was $2000, transferred from a residual retainer held by the firm. The retainer agreement listed the hourly rates for each attorney and paralegal and outlined other items and charges for which defendant would be responsible. The retainer agreement also advised "[c]lients have the right to have the fee arrangement fully and completely explained prior to entering into any agreement for services."

Plaintiff sent defendant itemized bills on the fifteenth of every month from May 2018 through November 2018. The initial retainer was depleted, and a

3

balance became outstanding beginning with the July invoice, where $3,282.38 was due. By November, there was a balance due of $17,951.98.

On October 22, 2018, plaintiff sent defendant a "2[0A]" letter, which is required to be sent before a lawyer initiates a lawsuit for outstanding fees in accordance with Rule 1:20A-6. The 20A letter notified defendant of his balance due of $17,143.39, and that if it were not paid in full within thirty days, plaintiff would "commence court proceedings to collect the fees due to our firm." The letter further stated

> [i]f you dispute the amount of your bill, you have the right to a hearing by the District Fee Arbitration Committee. . . . If you wish to exercise this option, you must promptly contact Michael Sprague, Esq., Secretary of the District Fee Arbitration Committee of Bergen County, [twenty-five] Main Street, Court Plaza, North, [Second] Floor, Hackensack, NJ 07601, (201)342-0808, whereby you will receive instructions on how to obtain an Attorney Fee Arbitration Request Form. If that form is not filed within thirty [] days of receipt of this letter, you will forfeit your right to a fee arbitration hearing.
>
> [(emphasis added).]

Defendant and plaintiff executed the substitution of attorney, which was filed on November 19, 2018, thereafter plaintiff filed a complaint in the Special Civil Part seeking $15,000 out of the $17,951.98 which plaintiff argued defendant owed for legal services. On January 10, 2019, plaintiff moved for

default judgment which was granted, but defendant filed an answer that same day asserting the bill was paid, the claim or the amount of the claim was unfair, the services were not received and were defective, and that plaintiff did not file the lawsuit in the proper place. The default judgment as to the appellate fees was vacated on January 15, 2019, and defendant was permitted to file his answer.

On February 5, 2019, defendant submitted an Office of Attorney Ethics Attorney Fee Arbitration Request form, requesting to waive his right to present the matter to the court and instead submit his case to arbitration. Robert Saxton, Secretary for District Fee Arbitration for Monmouth County, faxed a notice to plaintiff that defendant had requested arbitration on February 11, 2019. In a letter dated February 13, 2019, plaintiff notified Saxton she filed the lawsuit against defendant on November 29, 2018, defendant had filed an answer on January 10, 2019, trial was scheduled for February 27, 2019, and therefore, defendant could not now seek to have this matter moved to Fee Arbitration.

On February 13, 2019, Saxton sent a letter to defendant declining jurisdiction, as defendant was "out of time to file and therefore los[t] the right to file." In a February 24, 2019, letter to Saxton, defendant raised specific objections, but the matter was not arbitrated by the committee.

The matter was tried on February 27, 2019. At the beginning of trial, defendant stated "I just realized that [the trial judge] is in two situations, in a family court and here in civil court, and . . . it may present a conflict of interest." The trial judge rejected the assertion that he was biased and proceeded with the trial.

Plaintiff produced the retainer agreement and the monthly bills sent to defendant from May 2018 through November 2018 as well as the October 22 Rule 1:20A-6 letter sent to defendant. When asked by defendant if she gave him a price for her services and a list of what she was going to do for him, plaintiff answered that she did provide the price for the services – the prices and hourly rate – but that she did not provide a list of "specific services."

Defendant then testified and produced the February 24, 2019, letter he wrote to Saxton, arguing Rule 1:20A-6 required plaintiff to give defendant the name and contact information of the secretary in the district where plaintiff's office was located. However, the trial judge disagreed, stating plaintiff was required to give the contact information of the district where the secretary maintains an office. Defendant argued plaintiff gave him the wrong name and contact information, rendering the arbitration notice "defective," but the trial judge rejected that argument. Defendant then produced credit card bills, which

6

had charges to plaintiff on May 29, for $1,068.37, and July 2, for $3,830.61. While plaintiff was able to locate her bill to defendant containing a credit for $3,830.61, she was unable to locate a credit for $1,068.37 and conceded the trial judge should take off that charge from the amount she was seeking from defendant.

The trial judge found the retainer agreement reflected the initial retainer of $2000; described the primary attorney and her responsibilities; addressed the hourly rates of plaintiff, other associates, and paralegals; stated that the client would be charged at the hourly rates plus costs and disbursements; and that the firm would provide monthly invoices for all legal fees. The trial judge also found the retainer agreement to be consistent with plaintiff's testimony that she received $2000, defendant received credit for that, and plaintiff billed defendant monthly from the moment she was retained, with the last bill on November 15, for $17,951.88.

The trial judge further found plaintiff sent the Rule 1:20A-6 letter by regular mail, certified mail, and email. The trial judge found delivery by certified mail was consistent with the court rule and was done before the complaint was filed. The trial judge also found that plaintiff did not err in giving defendant the arbitration fee committee contact information in Bergen County,

rather than the county in which she practices, but even if she did, a minor deficiency

> will not defeat this type of case, even if [plaintiff] was wrong, and I find she was not. I find it's the district committee of the attorney where the fee arbitration is filed, . . . [b]ut if [defendant] received the letter and had an objection either on jurisdictional grounds [or] on anything, that should have been done within the [thirty] days.

The trial judge noted there was no testimony before him from defendant that he never received the initial fee arbitration committee letter, no testimony he did not have an attorney/client relationship with plaintiff, no testimony that the signature on the retainer agreement was not his, or that plaintiff did not perform the work that is the subject matter of the invoices.

As to defendant's dispute regarding billing, the trial judge found since plaintiff could not locate and produce a credit for defendant's charge of $1,068.37, he credited defendant that amount. Although plaintiff's total bill was $17,958.98, and a credit of $1,068.37 would bring that to $16,883.61, the trial judge noted that plaintiff brought her complaint in the Special Civil Part, which limits damages to $15,000, and took the $1,068.37 off $15,000 instead for a total due $13,931.63. The trial judge also added court costs to the judgment. This appeal followed.

8

When we review a trial judge's decision in a non-jury trial, "we give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). See also Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974). We "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, 65 N.J. at 484). However, we review conclusions of law de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendant argues it was "proven at trial" that plaintiff "put forth fraudulent information and was unable to account for how the billing was contrived" and therefore she had "unclean hands" and was not entitled to relief from the court. Based on our review of the record, we disagree.

The trial judge rejected the testimony he did not consider accurate and accepted the testimony that matched the invoices. Indeed, the trial judge rejected plaintiff's claim that she credited the $1,068.37 as it was not substantiated. There is ample evidence in the record to support the trial judge's

finding that plaintiff's testimony regarding the retainer agreement, the invoices, and the other credit was credible, as it was consistent with the invoices and retainer agreement produced at trial.  Therefore, there is no reason to disturb the trial judge's findings on these grounds.

We reject defendant's additional arguments about fraud as defendant did not raise this issue before the trial judge, and it is not jurisdictional in nature nor does it substantially implicate the public interest.  Zaman v. Felton, 219 N.J. 199, 226-27 (2014); Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 643 (1997); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also State v. Robinson, 200 N.J. 1, 20 (2009) (reiterating the principle of not considering an issue raised for the first time on appeal absent an exception).  Even if he had raised this argument, as the trial judge noted, defendant produced no evidence that plaintiff did not perform the work that is the subject matter of the invoices. The invoices were itemized, with each line showing the date of the billable task, who performed the billable task, how much time was spent on the billable task, and the total due for that task.  Defendant did not dispute any of these tasks specifically or allege plaintiff did not perform any of that work.  Rule 1.5(b) of the New Jersey Rules of Professional Conduct (RPC) states "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be

communicated in writing to the client before or within a reasonable time after commencing the representation." A lawyer is to "disclose to a client the basis upon which the client is to be billed for both professional time and <u>any other charges</u>." <u>Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn</u>, 410 N.J. Super. 510, 530-31 (App. Div. 2009) (citing <u>ABA Comm. on Ethics and Prof'l Responsibility</u>, Formal Op. 93-379 (1993)). The lawyer "must disclose <u>all</u> charges for which the client will be financially responsible." <u>Id.</u> at 531 (quoting Michels, <u>N.J. Attorney Ethics</u> § 33:4-1 (2009)).

Here, the retainer sets out the hourly rates and legal charges for which defendant would be responsible, such as court appearances, research, correspondence, preparing legal documents, and telephone calls, among other things. The retainer agreement also sets forth a myriad of other non-legal-service charges for which defendant was responsible, including filing fees, service fees, photocopying fees, postage, long distance calls, messenger service, transcripts, internet research, witness fees, expert fees, private investigation services, CDs, and thumb drives, among other things. The retainer agreement complied with the requirement under RPC 1.5(b) in that it notified defendant of the basis on which he would be billed for both professional time and "any other

charges." Therefore, there is ample evidence in the record to support the trial judge's finding that the retainer complied with the law.

Defendant's argument the trial judge was biased against him is without merit as defendant did not make a motion for the trial judge's recusal, which is required by Rule 1:12-2. Even giving defendant the benefit of the doubt as a pro se litigant, the trial judge, within whose discretion it is to decide whether or not he is biased or otherwise cannot sit fairly, addressed defendant's concerns and stated he did not see any problem, as "[p]eople appear before [him] all the time on different issues over and over again." Further, a review of the record and trial transcript reveals no bias; to the contrary, the trial judge gave defendant his $1,068.37 credit subtracted from the Special Civil Part maximum recovery of $15,000, versus the total due of $17,958.98, which was in defendant's favor.

We also reject defendant's arguments regarding the fee arbitration process. Rule 1:20A-6 states that

> [n]o lawsuit to recover a fee may be filed until the expiration of the [thirty] day period herein giving Pre-Action Notice to a client . . . . Pre-action Notice shall be given in writing, which shall be sent by certified mail and regular mail to the last known address of the client . . . and which shall contain the name, address and telephone number of the current secretary of the Fee Committee in a district where the lawyer maintains an office. If unknown, the appropriate Fee Committee secretary listed in the most current New Jersey Lawyers

12

Diary and Manual shall be sufficient. The notice shall specifically advise the client of the right to request fee arbitration and that the client should immediately call the secretary to request appropriate forms; the notice shall also state that if the client does not promptly communicate with the Fee Committee secretary and file the approved form of request for fee arbitration within [thirty] days after receiving pre-action notice by the lawyer, the client shall lose the right to initiate fee arbitration. The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.

Plaintiff sent the Rule 1:20A-6 letter, instructing defendant he could request fee arbitration if he responded within thirty days or he would lose the right to arbitration, by both regular and certified mail, as well as by email. Defendant does not dispute plaintiff sent the letter and does not assert he did not receive it, but rather argued it was "defective" because plaintiff gave contact information for a secretary in the incorrect county.

However, as the trial judge noted, even if plaintiff had provided the contact information for the secretary in the incorrect county, that had no bearing on the fact that defendant did not timely request arbitration. Defendant did have the opportunity to choose fee arbitration, but did not respond within the thirty days required by Rule 1:20A-6, and as a result, the opportunity for arbitration was lost. Kimm v. Cha, 335 N.J. Super. 262, 264 (App.Div.2000).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-3437-18T4