# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3296-22

A.N.B.,

    Plaintiff-Respondent,

v.

T.S., JR.,

    Defendant-Appellant.

_____

Submitted May 15, 2024 – Decided December 18, 2024

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0156-23.

Roberts & Teeter, LLC, attorneys for appellant (Michael B. Roberts, on the briefs).

Weiner Law Group, LLP, attorneys for respondent (Marie-Christine Aziz, on the brief).

The opinion of the court was delivered by

WALCOTT-HENDERSON, J.S.C. (temporarily assigned)

Defendant T.S.[1] appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act, (PDVA), N.J.S.A. 2C:25-17 to -35, based on the court's finding of the predicate act of harassment. Defendant seeks vacation of the FRO and a new hearing, arguing substantive and procedural deficiencies, including that the court erred in finding he intended to harass plaintiff and not advising him of the risk of proceeding as a self-represented litigant when plaintiff was represented by counsel. We disagree and affirm.

We glean the following facts from the evidence produced at the FRO hearing and the pleadings and orders contained in the record.

Plaintiff and defendant are former spouses and the parents of two minor children, ages four and five at the time of the filing of defendant's appeal. Plaintiff also has a daughter from a previous marriage who resided with them, she was eight-years old at the time of appeal. The parties' divorce lawsuit was initiated in July 2022 and finalized in 2023.

During the marriage, the parties resided on a military base in Virgina and filed for divorce in that State. Prior to filing for divorce, plaintiff was granted

---

[1] We use initials to protect the identity of domestic violence victims and to preserve the confidentiality of these proceedings pursuant to Rule 1:38-3(c)(12).

military protection orders and a no-contact order from the naval legal office located on the military base.[2]

Plaintiff and her children relocated to New Jersey in March 2022 to be with her family because she feared being near defendant in Virginia. Defendant remained in Virginia, and the parties agreed that defendant could communicate with the children via their iPads every other day for one hour. At some point during the divorce proceedings, the parties agreed to a parenting-time plan that required the TalkingParents App to be their "source of communication."[3]

Plaintiff testified that following her relocation to New Jersey, defendant contacted her nonstop via the TalkingParents App and also sent police officers to her home on several occasions, allegedly to perform welfare checks on the children. She also testified he would use the children and various other tactics, including having his family members call her, to get her to speak with him so he could start arguments with her.

---

[2] Plaintiff testified that she had obtained military orders of protection, which remained in place for four to five months. In 2021, she attempted to obtain another protection order but, instead, was granted a thirty-day no contact order.

[3] TalkingParents is a co-parenting application that helps divorced or separated parents communicate about their children without using their personal phones. The application keeps a detailed record of all communications between the individuals.

A-3296-22

On July 7, 2022, plaintiff filed a domestic-violence complaint against defendant for a temporary restraining order (TRO), alleging predicate acts of harassment and cyber harassment. N.J.S.A. 2C:25-19(a); N.J.S.A. 2C:33-4; N.J.S.A. 2C:33-4.1. On the same day, the court granted the TRO against defendant. The TRO prohibited defendant from contacting plaintiff and several members of her family and barred defendant from plaintiff's home and place of employment. The TRO also granted plaintiff temporary custody of their two shared children.

Thereafter, plaintiff amended the TRO on two separate occasions to: include the predicate act of contempt of the restraining order; add allegations of prior domestic abuse; and include her daughter from a previous marriage as a protected party.

At the commencement of the FRO hearing, the court thoroughly explained the hearing process, including the order of testimony and witnesses, and the permanent consequences defendant would face if a restraining order were to be granted at the conclusion of the hearing. The court inquired of defendant whether he wished to have an attorney represent him, stating, "now is the time to ask." The court explained that his attorney must be licensed to practice law in the State of New Jersey and further inquired whether defendant wanted a short

recess to consult with an attorney or "run this by [his divorce] attorney . . . ?" Defendant initially responded in the affirmative but changed his mind a short time later and stated that he wanted to proceed as a pro se litigant.

During the FRO hearing, plaintiff testified and called two witnesses: a police officer from the Woodbridge Police Department, who testified regarding a welfare check he had been asked by defendant to perform at her home; and her Virginia divorce attorney, who testified regarding a letter from defendant's matrimonial lawyer indicating defendant had contacted plaintiff in violation of the Virgina no contact order.

Plaintiff testified defendant bombarded her with numerous messages on the TalkingParents App, contacted local police to perform unnecessary welfare checks on her and the children, took away the children's iPads so that she would have to allow them to use her phone, and that she was afraid defendant might harm her. She further testified that defendant had his family contact her after entry of the TRO.

As to prior history of domestic violence, plaintiff testified that she and defendant had been together for approximately five years and that throughout their relationship, there were incidents of abuse, resulting in a prior separation for approximately five months and, when she was pregnant with their younger

A-3296-22

child, the entry of a military protection order, which defendant violated by contacting her through YouTube and social media.

After reviewing defendant's right to cross-examine plaintiff, the court asked, "would you like to ask her questions by way of cross-examination?" Defendant responded, "no." The court next asked defendant if he would like to testify, stating "I remind you this is your opportunity to tell me everything you want to tell me, why you think a restraining order is not necessary or any other relevant information." Defendant responded, "[o]kay. So I don't think it's going to be necessary . . ." and "I'm just trying to contact my kids." Defendant denied threatening plaintiff or doing anything to make her feel unsafe. He concluded his direct testimony by stating, "I have no history of putting my hands on her or violence or anything like that, being violent with her at all." On cross-examination, defendant admitted that he contacted plaintiff after he knew about the TRO but denied that he had been served with it. He testified, "[t]he only documentation I received for the restraining order was the one I got from the court summons."

The court reviewed the evidence and issued a thorough oral opinion after making specific factual findings as to each witness's testimony. The court found plaintiff's testimony credible and convincing but found defendant's testimony

6

unpersuasive. The court acknowledged it did not have any evidence showing when defendant was served with the restraining order, resulting in the dismissal of the predicate act of contempt of the restraining order. The court also dismissed the predicate act of cyber harassment, finding no evidence to sustain that claim.

The court, however, found the predicate act of harassment based on the number of messages defendant had sent to plaintiff and, more particularly defendant's actions in taking away the children's iPads, his means of communicating with the children, in violation of their agreement. The court found the sheer number of messages sent by defendant and the wellness checks he had asked police to make, "when . . . he was aware there was a restraining order in place," constituted harassment. The court reasoned that defendant's intention was not really to see the children, although "that was part of it" but concluded "[i]t's more nuanced." The court further found defendant's behavior indicative of control and manipulation and specifically referenced defendant threatening to slash plaintiff's tires when she was indecisive about her second pregnancy. And, thus, the court concluded the first prong of Silver v. Silver had been satisfied. 387 N.J. Super. 112, 125-26 (App. Div. 2006).

A-3296-22

In addressing <u>Silver</u>'s second prong, the court concluded that plaintiff needed protection from defendant based in part on plaintiff's testimony about defendant's prior acts of domestic violence. <u>Ibid.</u> The court stated the prior military orders of protection show that "other authorities thought that this plaintiff need[ed] protection from this defendant." The court entered the FRO against defendant on the same day. Defendant appealed.

On appeal, defendant argues the following points for our consideration:

> I. THE FRO SHOULD BE REVERSED BECAUSE DEFENDANT WAS NOT ADVISED OF THE DANGERS OF PROCEEDING WITHOUT COUNSEL AND WAS PREJUDICED BY HIS SELF-REPRESENTATION.
>
> II. THE FRO SHOULD BE REVERSED BECAUSE THE DEFENDANT REQUESTING A POLICE WELFARE CHECK FOR HIS CHILDREN IS NOT HARASSMENT.
>
> III. IN EVALUATING PLAINTIFF'S NEED FOR PERMANENT AND FINAL RESTRAINTS THE COURT MISINTERPRETED THE PRIOR MILITARY ORDERS AND NEEDLESSLY IMPOSED RESTRAINTS.

Our scope of review of Family Part orders is limited. <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. <u>Id.</u> at 413. Deference

A-3296-22

is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility."  Id. at 412.

The entry of a final restraining order requires the trial judge to conduct a two-step analysis.  Silver, 387 N.J. Super. at 125.  First, the court must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred.  Ibid.; see N.J.S.A. 2C:25-29(a) (stating that "the standard for proving the allegations in the complaint shall be by a preponderance of the evidence").  In performing that function, "the Act does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'"  Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).

Second, upon a finding of the commission of a predicate act of domestic violence, the court must decide whether a restraining order is necessary to provide protection for the victim from an immediate danger or to prevent further abuse.  Silver, 387 N.J. Super. at 126-27.  The inquiry is necessarily fact specific, id. at 127-28, requiring consideration of the following factors under N.J.S.A. 2C:25-29(a):

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a)(1)-(6).]

Defendant's first argument—that reversal is warranted because he was not advised he could seek counsel—is belied by the record, which shows that at the outset of hearing, the court explained the procedure for the hearing and explicitly advised defendant of his right to counsel. The court also inquired of defendant, "[d]o you wish to consult with or hire an attorney of your choosing at this [] time?" Although defendant initially responded in the affirmative, on hearing that counsel needed to be licensed to practice in this State and not just Virginia where he resides, defendant changed his mind and opted to represent himself. Moreover, the court offered to delay the trial so defendant could obtain counsel,

10

but he decided to proceed without counsel. The court was satisfied that defendant understood the consequences of his decision and proceeded with trial. We therefore reject defendant's argument and conclude it is without sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Defendant also asserts the court erred by finding the predicate act of harassment, stating that the purpose of his efforts was to get in touch with his children and not to harass plaintiff. He claims that although the court found his conduct alarming and annoying to plaintiff, the court did not expressly find it was defendant's purpose to harass plaintiff. However, plaintiff maintains that defendant's continuous attempts to contact her, "all while yelling at her [] ma[de] her feel unsafe," annoyed and frightened.

The court meticulously scrutinized the evidence prior to making its findings of the predicate act of harassment and noted in particular defendant's actions in taking away the children's iPads in violation of the parties' agreement that defendant would contact the children directly via their devices. The court also reviewed the evidence depicting defendant's numerous messages to plaintiff, stating "everything is five to seven or eight messages just to confirm a single word or date." The court further considered the wellness checks at plaintiff's home initiated by defendant allegedly because he was checking on the

kids. Additionally, the court noted the record contains pages and pages of the parties' communications via the TalkingParents App and found these messages made clear "it [was] exhausting for this plaintiff to deal with the defendant" and, coupled with the rest of the evidence on record, was enough to establish harassment. Focusing on the statutory language in N.J.S.A. 2C:33-4(a) and (c), the court concluded that defendant had essentially manipulated the circumstances to ensure ongoing contact with plaintiff in violation of the TRO by taking away the children's iPads, which was his sole means of direct contact with the children at that time. The court found defendant's actions combined with the prior history of domestic violence, as recounted by plaintiff, constituted the predicate act of harassment under Silver. 387 N.J. Super. at 126-27.

We first examine the court's finding of the predicate act of harassment. Under N.J.S.A. 2C:33-4(a) to (c), a person commits harassment if, "with purpose to harass another," he or she:

> (a) [m]akes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> . . . .

(c) [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4.]

The court identified that it made its finding of the predicate act of harassment under subsections (a) and (c). We accept the factual and credibility findings of the Family Part judge, which are entitled to deference. Balducci v. Cige, 240 N.J. 574, 595 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). In an appeal from a non-jury trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). Here, the court thoroughly reviewed the witnesses' testimony and the evidence presented, including the messages on the TalkingParents App and the parties' prior history of domestic violence, and concluded that defendant repeatedly committed acts with the purpose to alarm or seriously annoy plaintiff. N.J.S.A. 2C:33-4(a); N.J.S.A. 2C:33-4(c). The court's finding of the predicate act of harassment is well-supported by the record. Further, the court properly dismissed the remaining predicate acts, correctly finding insufficient evidence to support plaintiff's claims defendant had committed the predicate acts of cyber harassment and contempt of the restraining order.

A-3296-22

"[T]o obtain an FRO under the [PDVA], a plaintiff must not only demonstrate defendant has committed a predicate act of domestic violence . . . but also that a restraining order is necessary for his or her protection." C.C. v. J.A.H., 463 N.J. Super. 419, 429 (App. Div. 2020); see also Silver, 387 N.J. Super. at 126. Again, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

Plaintiff specifically expressed her continued fear of defendant, testifying that she relocated to New Jersey to be with family because she feared being in Virginia near defendant. See D.M.R. v. M.K.G., 467 N.J. Super. 308, 325 (App. Div. 2021) (reversing FRO when the plaintiff had not expressed any fear of the defendant and had no reason to contact him). The court found plaintiff's testimony credible and concluded that she was in need of protection based upon defendant's prior actions. As previously stated, we defer to the court's credibility findings, which were based on its observations of the parties and witnesses at trial. Cesare, 154 N.J. at 411.

Because our scope of review of Family Part orders is limited and we owe substantial deference to the Family Part's findings given the court's special

14

expertise in family matters, we see no basis to disturb the court's well-reasoned findings and issuance of the FRO.  Balducci, 240 N.J. at 595.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3296-22