**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1728-23

IN THE MATTER OF THE
APPEAL OF THE DENIAL OF
P.J.M.'S APPLICATION FOR
A PERMIT TO CARRY A
HANDGUN,

and

IN THE MATTER OF THE
REVOCATION OF P.J.M.'S
FIREARMS PURCHASER
IDENTIFICATION CARD.

_____

Submitted November 10, 2025 – Decided January 22, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPA-0031-23.

Evan F. Nappen Attorney at Law, PC, attorneys for appellant P.J.M. (Louis P. Nappen, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Jaimee M. Chasmer, Assistant Prosecutor, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for amicus curiae Attorney General of New Jersey (Stephen Ehrlich, Deputy Solicitor General, and Sookie Bae-Park, Assistant Attorney General, of counsel; Andrew H. Yang, Amanda I. Morejón, and Monica E. Finke, Deputy Attorneys General, on the brief).

PER CURIAM

Petitioner P.J.M.[1] appeals from a trial court order denying his application for a permit to carry a handgun and revoking his New Jersey firearms purchaser identification card ("FPIC"). Petitioner contends N.J.S.A. 2C:58-3(c)(5) is unconstitutional on its face and as applied, and further contends there was insufficient evidence to support the trial court's determinations. Having considered the arguments in light of the record and applicable legal principles, we affirm.

I.

We recite the underlying facts and procedural history relevant to our opinion. Petitioner filed an application for a permit to carry a handgun with the Elmwood Park Police Department ("EPPD"). His application included four character references from individuals who had known him for at least fifteen years and endorsed his character favorably. In April 2023, the Chief of EPPD

---

[1] We granted P.J.M.'s request to utilize initials to protect his identity.

denied petitioner's application, based upon his three prior convictions for driving while intoxicated ("DWI"), which occurred in 2006, 2007, and 2014, discovered while performing a background check. As a result of the third DWI, petitioner's driver's license was suspended for ten years, and he was required to install an interlock device for one year after the suspension is lifted. The chief found that due to those circumstances, issuance of the permit would be against "public health . . . safety and welfare." Petitioner appealed the chief's decision to the Law Division. In response to petitioner's appeal, the State moved to revoke his existing FPIC.

The court held a simultaneous hearing on both the appeal of the denial of petitioner's application for a carry permit and the State's motion to revoke petitioner's FPIC. During the hearing, petitioner testified he has held a New Jersey FPIC since 2005. Further, he obtained a change of address for his FPIC over multiple residential moves and had been approved for handgun purchase permits in 2021 and 2022. On cross-examination, petitioner was confronted with his driving record, which included three DWI's and three violations for abandoning a motor vehicle—two times in 2019, on a public highway and once in 2020 on private property. Petitioner testified that the latter incidents were

related to commercial trailers registered in his name, which were abandoned by his employees.

The State also presented records of an arrest that occurred in January 2014, where petitioner was charged with simple assault in connection to an alleged domestic violence incident involving a romantic partner. According to the arrest report narrative written by the testifying detective, petitioner's then-romantic partner alleged that he pulled her hair, threw her on the bed, threatened her life, and struck her in the mouth. The detective also testified that petitioner's partner had visible signs of injury to her face and upper neck area, which were supported by photographs taken at the time of the arrest report. Petitioner's simple assault charge was dismissed after the partner failed to appear in municipal court. Additionally, no restraining order was ever issued.

When confronted with this information, petitioner testified he called the police because his partner was destroying his property after an argument. He stated that he asked her to leave, which caused her to become irate, resulting in him threatening to call the police to remove her. He testified that she physically attacked him and he responded by pushing her away to run down the stairs. He also testified that he had no felony convictions, had never been subject to a restraining order, was not on a terrorist watchlist, and was not subject to any

4

other disqualification that would prohibit him from firearms use. He denied any substance abuse issues and described the prior DWI troubles as "party problems" and not from any underlying alcohol disorder. Petitioner stated it was around nine years since the last time he attended a nightclub, which was around the time of his last DWI.

Petitioner was also confronted with evidence of a 2007 arrest in Florida for possession of cocaine, battery, and resistance/obstruction of arrest. He testified he could not "recall" many of the details of the arrest or its outcome but acknowledged to pleading to a misdemeanor offense and receiving unsupervised probation. Petitioner denied engaging in any of the alleged criminal conduct.

The chief testified he denied P.J.M.'s application due to the totality of the circumstances, including P.J.M.'s three past DWI convictions, the domestic incident with his partner, and his prior Florida convictions when considering the public health, safety, and welfare. He also considered the three abandoned vehicle violations at the time of his decision as well. He testified that the simple assault incident report was not available when he was formulating his prior decisions, but he was alerted to the fact petitioner had been arrested in the past at the time of his review.

A-1728-23

When asked the reasons for why he reviews a carry permit differently than an FPIC, the chief explained:

> [I]t's the ability to carry a firearm as opposed to just possess and own one, in your home, right. There [are] rules that come with just possessing ownership of a handgun. Now it's another situation where you now carry it. So that was concerning to me because [petitioner] found it okay to get behind the wheel of a vehicle intoxicated, that we know of three times, right. I don't know other times that he may have done it that he got away with it. So now I have to consider putting a firearm in his hand when he made the decision to get behind the wheel of a vehicle that way. Now what if he, we introduced a firearm into that situation and he's intoxicated. That was very concerning to me. So that's why I decided in this case to deny the carry permit.

On cross-examination, when questioned as to the reasons why he approved petitioner's prior permits to purchase a handgun, but denied P.J.M.'s permit to carry a handgun the chief stated:

> [I]n my opinion it's the same as if I'm going [to] permit you to purchase a car but not drive it and now I'm going to allow you to drive it, right. That's the way I view it. If you're, if you have an issue with alcohol, I don't care if you buy a car and you can't drive it. But now you're going [to] drive a car. Now I have to look deeper at that.

Additionally, the chief testified that P.J.M.'s three DWI convictions are "not common" and are "pretty egregious."

After the hearing, the court rendered an oral decision and issued a written order denying petitioner's application for a permit to carry a handgun and granted the State's motion to revoke his FPIC. The court found in pertinent part:

> Given the testimony that's been presented in this hearing, I am troubled by the background of [petitioner] given the fact of his prior involvement to three separate DWIs, the first in 2006, the second from 2007, and the third offense from 2014, and other traffic infractions, which indicate to me a lack of regard for the traffic laws of our state. Not only a disregard for the law, but a disregard for the public safety as well. In addition to these offenses, he was also arrested for . . . simple assault. Albeit, the charge was dismissed, [the sergeant] did testify that there was corroboration as to the injuries which are asserted through the photos taken immediately after the incident which have been offered into evidence. Additionally, [petitioner] testified on cross that he had not been arrested prior to the [earlier New Jersey] arrest, but when confronted with the charges out of Florida, I would say he was dismissive of the offense indicating he didn't remember the charges and didn't even remember what he pled guilty to.

When addressing petitioner's credibility, the court explained:

> It [] seemed strange to me given someone who basically I think, appears to indicate he led a law-abiding life, but he couldn't remember anything from an event in which he was charged with drug offenses and battery offenses involving a police officer. So, I do think this calls into question the credibility relative to his testimony.

A-1728-23

The court concluded:

> Based on the totality of the evidence presented at the hearing, I do find that a preponderance of the evidence that the issuance of the permit to carry a handgun would not be in the interest of the public health, safety and welfare pursuant to N.J.S.A. 2C:58-3(c)(5). Therefore, I will grant the State's motion to revoke [petitioner's] FPIC card and deny the applicant's appeal of the . . . denial of his permit to carry a handgun, because I do find that the issuance would not be in the interest of the public health, safety and welfare as I find [P.J.M.] lacks the essential character of temperament necessary to be entrusted with a firearm.

On appeal, P.J.M. contends: (1) the "vague and arbitrary standard of law utilized . . . to deny a constitutional right should be curtailed" in the interest of diversity, equity, and inclusion; (2) N.J.S.A. 2C:58-3(c)(5) is unconstitutional both on its face and as specifically applied to the petitioner; (3) the trial court erred because there is no indication of any current temperament issue concerning petitioner and he satisfied the licensing statute concerning the "character of temperament necessary to be entrusted with a firearm"; (4) both the government's questioning and the lower court's basis for denial exceed statutory authority and conflict with N.J.S.A. 2C:58-3(f) and the United States v. Rahimi, 602 U.S. 680 (2023) decision; and (5) lower court's decision relied improperly on hearsay, contrary to the "Weston" precedent. See Weston v. State, 60 N.J. 36, 46 (1972).

## II.

We begin by setting forth the principles that guide our analysis. A judicial determination concerning the granting, renewal, and revocation of an FPIC is governed by N.J.S.A. 2C:58-3(f). Pursuant to N.J.S.A. 2C:58-3(f), an FPIC "shall be void if the holder becomes subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]." Furthermore, "[a]ny firearms purchaser identification card may be revoked by the Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit." N.J.S.A. 2C:58-3(f). A county prosecutor, a chief of police, or any citizen "may apply to the court at any time for the revocation of the card." Ibid. "The State must prove, 'by a preponderance of the evidence, that forfeiture is legally warranted.'" In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 197 (App. Div. 2023) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 508 (2016)).

If the State proves that the firearms owner or FPIC licensee is subject to any of the N.J.S.A. 2C:58-3(c) disabilities by a preponderance of the evidence, a trial court may order the forfeiture and revocation. N.J.S.A. 2C:25-21(d)(3); F.M., 225 N.J. at 508.

9

N.J.S.A. 2C:58-3(c)(5) states in pertinent part:

> A handgun purchase permit or [FPIC] shall not be issued:
>
> . . . .
>
> (5) To any person where the issuance would not be in the interest of the public health, safety[,] or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm[] . . . .

Further, a judicial determination in an application to carry a weapon finding a petitioner poses a threat to the public health, safety, and welfare is a fact-sensitive analysis. F.M., 225 N.J. at 505.

The scope of our review is limited in both the denial of a carry permit and the revocation of an FPIC. "[W]e give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). "Reviewing appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). However, a "trial court's interpretation of the law and the legal consequences that flow from

10

established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "Questions of law receive de novo review." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citing Manalapan Realty, L.P., 140 N.J. at 378).

## III.

## A.

We first address petitioner's claims that "diversity, equity and inclusion demand" review of the constitutionality of N.J.S.A. 2C:58-3(c)(5) because the current version of the statute threatens to "deny minorities their rights" and the statute's language is vague under Rahimi. We "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Berardo v. City of Jersey City, 476 N.J. Super. 341, 354 (App. Div. 2023) (quoting Nieder v. Royal Indem. Inc. Co., 62 N.J. 229, 234 (1973)) (internal quotation marks omitted). Constitutional issues are not immune from this principle. State v. Galicia, 210 N.J. 364, 383 (2012). Here, as pointed out by the State, petitioner does not specifically delineate the constitutional provisions

11

which he claims have been violated. Because petitioner failed to raise this specific issue in the trial court and has failed to specify the constitutional right that has been affected or provide any cognizable or recognizable legal argument to support such, we decline to address this issue first raised on appeal.

Next, we address together petitioner's contentions that N.J.S.A. 2C:58-3(c)(5) is unconstitutionally vague and arbitrary both on its face and as applied, as well as his challenge under Rahimi. Despite petitioner's failure to raise these issues, we shall address his arguments because we deem the issues are of significant importance and the record is sufficiently developed to properly address the arguments.

We determine petitioner's contentions on these points lack merit. We previously held N.J.S.A. 2C:58-3(c)(5) does not offend the Court's decision in Bruen.[2] See M.U., 475 N.J. Super. at 194 (upon performing a detailed Bruen analysis, concluding N.J.S.A. 2C:58-3(c)(5) is constitutional because "it is . . . well-rooted in the nation's history and tradition of firearm regulation that individuals whose armament poses a risk to 'public health, safety[,] or welfare,'" are "beyond the ambit of 'the people' protected by the Second Amendment"); see also In re Appeal of the Denial of R.W.T, 477 N.J. Super. 443, 454 (App.

---

[2] N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022).

Div. 2023) ("reject[ing] a facial challenge to the constitutionality of the 'public health, safety[,] or welfare' disqualification criterion.").

We found the historical record showed "legislatures traditionally imposed status-based restrictions" that were "not limited to individuals who demonstrated a propensity for violence" but "also applied to entire categories of people due to the perceived threat they posed to an orderly society." M.U., 475 N.J. Super. at 189. We concluded N.J.S.A. 2C:58-3(c)(5) was constitutional on its face. Id. at 190-94. We observed:

> Our Supreme Court has explained that the challenged language of "to any person where the issuance would not be in the interest of the public health, safety or welfare" "was intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit . . . would nonetheless be contrary to the public interest."
>
> [Id. at 190-91 (quoting Burton v. Sills, 53 N.J. 86, 90-91 (1968)).]

"The Legislature's goal was to keep guns out of the hands of unfit persons," "noncriminal as well as criminal." Id. at 179 (quoting Burton, 53 N.J. at 91, 94).

We also are unpersuaded by petitioner's argument asserting the trial court engaged in a "responsible" person determination contrary to Rahimi. The United States Supreme Court in Rahimi rejected defendant's facial and as applied constitutional challenge to 18 U.S.C. § 922(g)(8), which under subsection (C)(i)

13

barred a person from possessing a firearm if a restraining order concluded the person posed "a credible threat to the physical safety" of another. Rahimi, 602 U.S. at 693. In Rahimi, the defendant had been involved in multiple violent incidents involving guns and a restraining order was issued against him with the court finding he posed a credible threat to another's physical safety. Defendant violated the restraining order and ultimately was indicted for possessing a firearm while subject to a domestic violence restraining order. Id. at 686-89.

In cases preceding Rahimi, the Supreme Court, "did not 'undertake an exhaustive historical analysis,'" and concluded "only" that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Id. at 702 (quoting Bruen, 597 U.S. at 31). "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." Id. at 690. The right to bear arms "was never thought to sweep indiscriminately." Id. at 691.

We are satisfied the court's denial of a carry permit and revocation of petitioner's FPIC was not inconsistent with Rahimi nor unconstitutional as applied to him. The court fully considered the public safety implications of granting petitioner's application. Here, the trial court heard testimony from the

Chief of Police of the EPPD, testimony from a detective concerning a previous arrest of petitioner, and testimony from the petitioner himself. We shall not repeat the testimony we outlined above for reasons of conciseness and note the record clearly shows the trial court considered the totality of the circumstances, including (1) the violent nature of petitioner's domestic incident, including the bruising on his partner's face; (2) his three DWI convictions, which exposed other drivers and the public to danger; (3) petitioner's arrest in Florida for possession of cocaine, battery, and resistance/obstruction of arrest, where petitioner testified he could not "recall" many of the details of the arrest or its outcome but acknowledged to pleading guilty to a misdemeanor which he also could not specifically recall in detail. Sufficient, credible evidence in the record supported the trial court's determination that petitioner would be a threat to public health, safety, and welfare under the statute and the court's denial of his application for a carry permit and its revocation of his FPIC were not error.

## B.

We now address petitioner's contention that the court erred because (1) the evidence did not support that he had any current "temperament" issue; (2) the evidence supported he had the "character of temperament necessary to be

entrusted with a firearm;" and (3) the court's basis for denial was ultra vires and relied upon hearsay. We disagree with all of these contentions.

In evaluating the facts presented by witnesses, and the reasons given for rejection of the application, the "court should give appropriate consideration to the chief's investigative experience and to any expertise he appears to have developed in administering the statute." Weston, 60 N.J. at 46. Individuals who have a history of domestic violence, whether documented or admitted, have been found unfit to purchase a firearm under subsection (c)(5), even though they had no convictions for domestic violence. F.M., 225 N.J. at 510-16; In re Z.L., 440 N.J. Super. 351, 356-59 (App. Div. 2015).

We are satisfied sufficient evidence was presented to the trial court to support its decision. Contrary to petitioner's contentions, the court adequately evaluated defendant's temperament, and the court did not inappropriately rely upon hearsay evidence.

Although petitioner contends the two incidents do not concern his current character of temperament, the trial court found his consistent dismissiveness of the seriousness of the incidents directly called into question his credibility and temperament. We discern no reason to deviate from the court's determinations

16

as sufficient, credible evidence was presented to meet the preponderance standard required to support the trial court's determinations

We also conclude petitioner's contention the trial court relied on inadmissible hearsay evidence concerning petitioner's 2007 Florida drug arrest and his 2014 simple assault arrest to lack merit. Concerning the 2007 incident, the evidence relied upon by the trial court consisted of petitioner's testimony on both direct and cross-examination, to which the court found petitioner's failure to recollect the incident or the outcome was difficult to believe. This evidence was divulged through the direct testimony of petitioner and was not hearsay. To the extent portions of this evidence may have been hearsay, we deem such to be insufficiently prejudicial when considering the other admissible evidence. Concerning the 2014 domestic incident, the testifying detective was one of the investigating officers and made firsthand observations of petitioner's partner on the date of the domestic incident and authenticated the photographs of the partner during trial. This evidence was clearly not hearsay.

To the extent any hearsay evidence was considered related to these two incidents, we deem the court's reliance on such to be inconsequential when taking into account the admissible evidence relied upon by the court to support its order. The admissible evidence includes the chief's testimony that

17

petitioner's three DWI convictions were uncommon and "egregious," and the questionable credibility found by the court concerning petitioner's reasons for the three abandonment of a vehicle charges.

We now turn to petitioner's appeal of the trial court's denial of his application for a carry permit. Because our analysis is identical to that in Section II, related to the trial court's revocation of defendant's FPIC, we conclude the trial court's order denying petitioner's application for a carry permit was also not error for these same reasons.

To the extent we have not expressly addressed any of petitioner's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division